# NOLDE BROTHERS, INC. *v.* LOCAL NO. 358, BAKERY & CONFECTIONERY WORKERS UNION, AFL–CIO

No. 75–1198.   Argued November 9, 1976—Decided March 7, 1977

BURGER, C. J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, BLACKMUN, POWELL, and STEVENS, JJ., joined. STEWART, J., filed a dissenting opinion, in which REHNQUIST, J., joined, *post*, p. 255.

*Allan L. Bioff* argued the cause for petitioner. With him on the brief was *Leonard Singer.*

*Ronald Rosenberg* argued the cause for respondent. With him on the brief were *Henry Kaiser, Eugene Gressman, George B. Driesen, Jerry Anker,* and *Gerhard P. Van Arkel.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

This case raises the question of whether a party to a collective-bargaining contract may be required to arbitrate a contractual dispute over severance pay pursuant to the arbitration clause of that agreement even though the dispute, although governed by the contract, arises after its termination. Only the issue of arbitrability is before us.

## (1)

In 1970, petitioner Nolde Brothers, Inc., entered into a collective-bargaining agreement with respondent Local No.

358, of the Bakery & Confectionery Workers Union, AFL–CIO, covering petitioner's Norfolk, Va., bakery employees. Under the contract, "any grievance" arising between the parties was subject to binding arbitration.[1]  In addition, the contract contained a provision which provided for severance pay on termination of employment for all employees having three or more years of active service.[2]  Vacation rights were

---

[1]                    ARTICLE XII
                 GRIEVANCES AND ARBITRATION
"Section 1.  All grievances shall be first taken up between the Plant Management and the Shop Steward.  If these parties shall be unable to settle the grievance, then the Business Agent of the Union shall be called in, in an attempt to arrive at a settlement of the grievance.  If these parties are unable to settle the grievance, the dispute will be settled as called for in Sections 2 and 3 of this Article.

"Section 2.  In the event that any grievance cannot be satisfactorily adjusted by the procedure outlined above, either of the parties hereto may demand arbitration and shall give written notice to the other party of its desire to arbitrate.  No individual employee shall have the right to invoke arbitration without the written consent of the Union.  The Arbitration Board shall consist of three (3) persons, one selected by the Company and one selected by the Union.  The two persons selected shall agree upon a third person who shall act as Chairman of the Arbitration Board.

"Section 3.  The decision or award of the Arbitration Board, or a majority thereof, shall be final and binding on both parties.  If the third party to arbitration is not selected in ten (10) days from receipt of notice, the Director of the U. S. Conciliation Service shall be requested to make the appointment.  The expense of the neutral arbitrator shall be borne equally by the parties.

"Section 4.  Pending negotiations or during arbitration there shall be no strikes, lock-outs, boycotts, or any stoppages of work."

[2]                    ARTICLE IX
                        WAGES
  .              .              .              .

"Section 5.  Each full-time employee who is permanently displaced from his employment with the Company by reason of the introduction of labor saving equipment, the closing of a department, the closing of an entire plant, or by lay off, shall be compensated for such displacement

also granted employees by the agreement;[3] like severance pay, these rights were geared to an employee's length of service and the amount of his earnings. By its terms, the contract was to remain in effect until July 21, 1973, and thereafter, until such time as either a new agreement was executed between the parties, or the existing agreement was terminated upon seven days' written notice by either party.

---

providing he has been actively employed by the Company for a period of at least three (3) years. An eligible employee's compensation for his displacement shall be on the basis of thirty (30) hours of severance pay, at his straight time hourly rate, for each full year or major portion of a year of active employment commencing with the fourth (4th) year following his most recent date of hire. Payment under this formula shall be limited to a maximum of nine hundred (900) hours of severance pay.

"Section 6. No severance pay will be paid to an eligible employee if he:

"(a) accepts employment in another plant of the Company; or

"(b) is voluntarily or involuntarily separated from his employment prior to the date he would otherwise be displaced for one of the reasons stated in Section 5 above."

[3]

## ARTICLE IV

## VACATIONS

"Section 1. Each full time employee is entitled to one week's vacation after one year's service, two (2) weeks' vacation after two (2) years' service, three (3) weeks' vacation after nine (9) years' service, and four (4) weeks' vacation after eighteen (18) years' service. . . .

. . . . .

"Effective January 1, 1972, the service requirement for the fourth (4th) week of vacation shall be reduced to seventeen (17) years.

"Effective January 1, 1972, each employee with twenty-five (25) or more years of service shall be entitled to a vacation benefit of five (5) weeks.

"Section 2. The anniversary date of employment shall be adjusted by periods of lay-offs or leaves of absence for the purpose of computation of vacation benefits only.

"Section 3. Vacation pay shall be based on straight time at the employee's regular hourly rate for the average number of hours worked by the employee in the thirteen (13) weeks preceding the vacation period, not including holiday weeks or weeks in which time is lost on account of sickness, with a minimum of forty (40) hours' pay and a maximum of forty-eight (48) hours' pay for each week of the vacation allowance."

In May 1973, the parties resumed bargaining after the Union advised Nolde, pursuant to § 8 (d) of the National Labor Relations Act, 29 U. S. C. § 158 (d) (1970 ed., and Supp. V), of its desire to negotiate certain changes in the existing agreement. These negotiations continued without resolution up to, and beyond, the July 21 contract expiration date. On August 20, the Union served the requisite seven days' written notice of its decision to cancel the existing contract. The Union's termination of the contract became effective August 27, 1973.

Despite the contract's cancellation, negotiations continued. They ended, however, on August 31, when Nolde, faced by a threatened strike after the Union had rejected its latest proposal, informed the Union of its decision to close permanently its Norfolk bakery, effective that day. Operations at the plant ceased shortly after midnight on August 31. Nolde then paid employees their accrued wages and accrued vacation pay under the canceled contract; in addition, wages were paid for work performed during the interim between the contract's termination on August 27 and the bakery's closing four days later. However, the company rejected the Union's demand for the severance pay called for in the collective-bargaining agreement. It also declined to arbitrate the severance-pay claim on the ground that its contractual obligation to arbitrate disputes terminated with the collective-bargaining agreement.

The Union then instituted this action in the District Court under § 301 of the Labor Management Relations Act, 29 U. S. C. § 185, seeking to compel Nolde to arbitrate the severance-pay issue, or in the alternative, judgment for the severance pay due. The District Court granted Nolde's motion for summary judgment on both issues. It held that the employees' right to severance pay expired with the Union's voluntary termination of the collective-bargaining contract and that, as a result, there was no longer any sev-

erance-pay issue to arbitrate. It went on to note that even if the dispute had been otherwise arbitrable, the duty to arbitrate terminated with the contract that had created it. 382 F. Supp. 1354 (ED Va. 1974).

On appeal, the United States Court of Appeals for the Fourth Circuit reversed. 530 F. 2d 548 (1975). It took the position that the District Court had approached the case from the wrong direction by determining that Nolde's severance-pay obligations had expired with the collective-bargaining agreement before determining whether Nolde's duty to arbitrate the claim survived the contract's termination. Turning to that latter question first, the Court of Appeals concluded that the parties' arbitration duties under the contract survived its termination with respect to claims arising by reason of the collective-bargaining agreement. Having thus determined that the severance-pay issue was one for the arbitrator, the Court of Appeals expressed no views on the merits of the dispute. We granted certiorari to review its determination that the severance-pay claim was arbitrable. 425 U. S. 970 (1976).

(2)

In arguing that Nolde's displaced employees were entitled to severance pay upon the closing of the Norfolk bakery, the Union maintained that the severance wages provided for in the collective-bargaining agreement were in the nature of "accrued" or "vested" rights, earned by employees during the term of the contract on essentially the same basis as vacation pay, but payable only upon termination of employment. In support of this claim, the Union noted that the severance-pay clause is found in the contract under an article entitled "Wages." The inclusion within that provision, it urged, was evidence that the parties considered severance pay as part of the employees' compensation for services performed during the life of the agreement.[4] In addition, the Union

---

[4] The fact that the amount of severance pay to which an employee is

pointed out that the severance-pay clause itself contained nothing to suggest that the employees' right to severance pay expired if the events triggering payment failed to occur during the life of the contract. Nolde, on the other hand, argued that since severance pay was a creation of the collective-bargaining agreement, its substantive obligation to provide such benefits terminated with the Union's unilateral cancellation of the contract.

As the parties' arguments demonstrate, both the Union's claim for severance pay and Nolde's refusal to pay the same are based on their differing perceptions of a provision of the expired collective-bargaining agreement. The parties may have intended, as Nolde maintained, that any substantive claim to severance pay must surface, if at all, during the contract's term. However, there is also "no reason why parties could not if they so chose agree to the accrual of rights during the term of an agreement and their realization after the agreement had expired." *John Wiley & Sons* v. *Livingston,* 376 U. S. 543, 555 (1964).[5] Of course, in determining the arbitrability of the dispute, the merits of the underlying claim for severance pay are not before us. However, it is clear that, whatever the outcome, the resolution of that claim hinges on the interpretation ultimately given the contract clause providing for severance pay. The dispute therefore, although arising *after* the expiration of the collective-bargaining contract, clearly arises *under* that contract.

There can be no doubt that a dispute over the meaning of the severance-pay clause during the life of the agreement

entitled under the collective-bargaining agreement varies according to the length of his employment and the amount of his salary also supports the Union's position that severance pay was nothing more than deferred compensation.

[5] The parties apparently viewed the vacation rights provided by Art. IV of the contract as vested in nature since after the bakery's closing, Nolde, upon the Union's request, paid its former employees all vacation pay which had accrued under the collective-bargaining agreement.

would have been subject to the mandatory grievance-arbitration procedures of the contract. Indeed, since the parties contracted to submit "all grievances" to arbitration, our determination that the Union was "making a claim which on its face is governed by the contract" would end the matter had the contract not been terminated prior to the closing of the plant. *Steelworkers* v. *American Mfg. Co.*, 363 U. S. 564, 568 (1960). Here, however, Nolde maintains that a different rule must prevail because the event giving rise to the contractual dispute, *i. e.*, the employees' severance upon the bakery's closing, did not occur until after the expiration of the collective-bargaining agreement.

### (3)

Nolde contends that the duty to arbitrate, being strictly a creature of contract, must necessarily expire with the collective-bargaining contract that brought it into existence. Hence, it maintains that a court may not compel a party to submit any post-contract grievance to arbitration for the simple reason that no contractual duty to arbitrate survives the agreement's termination. Any other conclusion, Nolde argues, runs contrary to federal labor policy which prohibits the imposition of compulsory arbitration upon parties except when they are bound by an arbitration agreement. In so arguing, Nolde relies on numerous decisions of this Court which it claims establish that "arbitration is a matter of contract and [that] a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Steelworkers* v. *Warrior & Gulf Nav. Co.*, 363 U. S. 574, 582 (1960); *e. g., Gateway Coal Co.* v. *Mine Workers,* 414 U. S. 368, 374 (1974); *John Wiley & Sons* v. *Livingston, supra,* at 547; *Atkinson* v. *Sinclair Refining Co.*, 370 U. S. 238, 241 (1962).

Our prior decisions have indeed held that the arbitration duty is a creature of the collective-bargaining agreement and that a party cannot be compelled to arbitrate any matter in

the absence of a contractual obligation to do so. Adherence to these principles, however, does not require us to hold that termination of a collective-bargaining agreement automatically extinguishes a party's duty to arbitrate grievances arising under the contract. Carried to its logical conclusion that argument would preclude the entry of a post-contract arbitration order even when the dispute arose during the life of the contract but arbitration proceedings had not begun before termination. The same would be true if arbitration processes began but were not completed, during the contract's term. Yet it could not seriously be contended in either instance that the expiration of the contract would terminate the parties' contractual obligation to resolve such a dispute in an arbitral, rather than a judicial forum. See *John Wiley & Sons, supra; Steelworkers* v. *Enterprise Wheel & Car Corp.*, 363 U. S. 593 (1960); *Machine Workers* v. *Oxco Brush Div.*, 517 F. 2d 239, 242–243 (CA6 1975); *Procter & Gamble Ind. Union* v. *Procter & Gamble Mfg. Co.*, 312 F. 2d 181, 186 (CA2 1962), cert. denied, 374 U. S. 830 (1963). Nolde concedes as much by limiting its claim of nonarbitrability to those disputes which clearly arise after the contract's expiration. Brief for Petitioner 22.

Our holding in *John Wiley & Sons* is instructive on this matter. There we held that a dispute over employees' rights to severance pay [6] under an expired collective-bargaining agreement was arbitrable even though there was no longer any contract between the parties. In their expired agreement, the parties had agreed to submit to arbitration:

> " 'any differences, grievance or dispute between the Employer and the Union arising out of or relating to this agreement, or its interpretation or application or enforcement.' " 376 U. S., at 553.

---

[6] The parties also disagreed over such matters as seniority rights, welfare security benefits, discharges and layoffs, and vacations. 376 U. S., at 554 n. 7.

The Court had little difficulty interpreting that language to require the arbitration of the Union's post-termination severance-pay claim since that claim was

> "based solely on the Union's construction of the . . . agreement in such a way that . . . [the Employer] would have been required to discharge certain obligations notwithstanding the expiration of the agreement." *Id.*, at 555.

We thus determined that the parties' obligations under their arbitration clause survived contract termination when the dispute was over an obligation arguably created by the expired agreement. It is true that the Union there first sought to arbitrate the question of post-contract severance pay while the agreement under which it claimed such benefits was still in effect. But that factor was not dispositive in our determination of arbitrability. Indeed, that very distinction was implicitly rejected shortly thereafter in *Piano Workers* v. *W. W. Kimball Co.*, 379 U. S. 357 (1964), rev'g 333 F. 2d 761 (CA7), on the basis of *John Wiley & Sons, supra,* and *Steelworkers* v. *American Mfg. Co., supra.*[7] We decline to depart from that course in the instant case, for, on the record before us, the fact that the Union asserted its claim to severance pay shortly after, rather than before, contract termination does not control the arbitrability of that claim.

The parties agreed to resolve *all* disputes by resort to the mandatory grievance-arbitration machinery established by their collective-bargaining agreement. The severance-pay dispute, as we have noted, would have been subject to resolution under those procedures had it arisen during the contract's term. However, even though the parties could have so pro-

---

[7] In *W. W. Kimball Co.*, the Seventh Circuit found that a dispute over seniority rights under an expired collective-bargaining agreement was nonarbitrable. There the dispute did not arise, nor were arbitration proceedings or an action to compel the same instituted, during the life of the agreement. 333 F. 2d, at 762–763.

vided, there is nothing in the arbitration clause that expressly excludes from its operation a dispute which arises under the contract, but which is based on events that occur after its termination. The contract's silence, of course, does not establish the parties' intent to resolve post-termination grievances by arbitration. But in the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract. Any other holding would permit the employer to cut off all arbitration of severance-pay claims by terminating an existing contract simultaneously with closing business operations.

By their contract the parties clearly expressed their preference for an arbitral, rather than a judicial, interpretation of their obligations under the collective-bargaining agreement. Their reasons for doing so, as well as the special role of arbitration in the employer-employee relationship, have long been recognized by this Court:

> "The labor arbitrator is usually chosen because of the parties' confidence in his knowledge of the common law of the shop and their trust in his personal judgment to bring to bear considerations which are not expressed in the contract as criteria for judgment. . . . The ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed." *Warrior & Gulf Nav. Co.,* 363 U. S., at 582.

Indeed, it is because of his special experience, expertise, and selection by the parties that courts generally defer to an arbitrator's interpretation of the collective-bargaining agreement:

> "[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construc-

tion of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Enterprise Wheel & Car Corp.,* 363 U. S., at 599.

While the termination of the collective-bargaining agreement works an obvious change in the relationship between employer and union, it would have little impact on many of the considerations behind their decision to resolve their contractual differences through arbitration. The contracting parties' confidence in the arbitration process and an arbitrator's presumed special competence in matters concerning bargaining agreements does not terminate with the contract. Nor would their interest in obtaining a prompt and inexpensive resolution of their disputes by an expert tribunal. Hence, there is little reason to construe this contract to mean that the parties intended their contractual duty to submit grievances and claims arising under the contract to terminate immediately on the termination of the contract; the alternative remedy of a lawsuit is the very remedy the arbitration clause was designed to avoid.

It is also noteworthy that the parties drafted their broad arbitration clause against a backdrop of well-established federal labor policy favoring arbitration as the means of resolving disputes over the meaning and effect of collective-bargaining agreements. Congress has expressly stated:

"Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U. S. C. § 173 (d).

In order to effectuate this policy, this Court has established a strong presumption favoring arbitrability:

"[T]o be consistent with congressional policy in favor of settlement of disputes by the parties through the ma-

chinery of arbitration. . . . [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf Nav. Co., supra,* at 582–583.

The parties must be deemed to have been conscious of this policy when they agree to resolve their contractual differences through arbitration. Consequently, the parties' failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship. In short, where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication.

We therefore agree with the conclusion of the Court of Appeals that, on this record, the Union's claim for severance pay under the expired collective-bargaining agreement is subject to resolution under the arbitration provisions of that contract.[8]

*Affirmed.*

MR. JUSTICE STEWART, with whom MR. JUSTICE REHNQUIST joins, dissenting.

When a dispute arises between two parties, that dispute is to be settled by the process of arbitration only if there is an

---

[8] Certiorari was neither sought, nor granted, on the question of the arbitrator's authority to consider arbitrability following referral, and we express no view on that matter. Similarly, we need not speculate as to the arbitrability of post-termination contractual claims which, unlike the one presently before us, are not asserted within a reasonable time after the contract's expiration.

agreement between the parties that the dispute will be settled by that means. Yet the Court today says that a union-employer dispute must be settled by arbitration even though the dispute did not even arise until after the contract containing an agreement to arbitrate had been terminated by action of the Union, and the employer had closed its business. I think this conclusion is neither required by existing precedent nor based upon any realistic appraisal of the contracting parties' intent.

Our cases, to be sure, have established the importance of arbitration in resolving disputes arising under collective-bargaining agreements and in thereby maintaining peaceful labor relations. A collective-bargaining agreement erects a system of industrial self-government; grievance and arbitration provisions in such an agreement make that collective-bargaining process continuous: "Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties." *Steelworkers* v. *Warrior & Gulf Nav. Co.*, 363 U. S. 574, 581.

But the duty to arbitrate can arise only upon the parties' agreement to resolve their contractual differences in the arbitral forum. And the presumptive continuation of that duty even after the formal expiration of such an agreement can be justified only in terms of a web of assumptions about the continuing nature of the labor-management relationship and the importance of having available a method harmoniously to resolve differences arising in that relationship. See generally *id.*, at 578.

Those assumptions are wholly inapplicable to this case. The closing of the bakery by the employer-petitioner necessarily meant that there was no continuing relationship to protect or preserve. Cf. *John Wiley & Sons* v. *Livingston*, 376 U. S. 543; *Howard Johnson Co.* v. *Hotel Employees*, 417

U. S. 249. And the Union's termination of the contract, thereby releasing it from its obligation not to strike, foreclosed any reason for implying a continuing duty on the part of the employer to arbitrate as a *quid pro quo* for the Union's offsetting, enforceable duty to negotiate rather than strike. See *Boys Markets, Inc.* v. *Retail Clerks,* 398 U. S. 235.

Although for these reasons no continuing duty to arbitrate can be presumed in this case in the interest of maintaining industrial peace, it might nevertheless rationally be argued that the arbitration agreement was a term or condition of employment that the employer could not unilaterally change without first bargaining to impasse. See 29 U. S. C. § 158 (a) (5). The trouble with that argument is that the National Labor Relations Board has rejected the notion that arbitration is a term or condition of employment that by operation of statute continues even after the contract embodying it has terminated. The Board, instead, has viewed arbitration as an obligation that arises solely out of contract, and is favored but not statutorily required as a dispute-resolving mechanism. See *Hilton-Davis Chemical Co.,* 185 N. L. R. B. 241 (1970). See also *Gateway Coal Co.* v. *Mine Workers,* 414 U. S. 368.

It is clear, therefore, that neither federal labor law nor the interest of maintaining industrial peace can serve to explain the Court's conclusion that the presumption of arbitrability extends to the facts of this case.

I realize that our decisions have broadly held that doubts as to arbitrability under an arbitration clause are to be resolved in favor of arbitrability. See *Warrior & Gulf Nav. Co., supra.* But those cases involved arbitration clauses that were undoubtedly in force at the time the dispute first arose, and arbitration was invoked to resolve issues arising during the continuing course of the employer-employee relationship. (See, *e. g., Piano Workers* v. *W. W. Kimball Co.,* 379 U. S. 357, where a dispute over the rights of employees to preferential hiring at a new plant commenced before the contract at

the old plant had expired.)   The question here, by contrast, is whether the presumption of arbitrability survived even when the contract providing for arbitration had terminated and the rights in dispute, though claimed to arise under the contract, ripened only after the contract had expired and the employment relationship had terminated.

For the reasons I have expressed, I think there was no agreement to arbitrate this dispute.  The Union had, of course, a clear cause of action under § 301 of the Labor Management Relations Act to seek judicial redress against the employer for its failure to meet its severance-pay obligations to the employees.  The Union did, in fact, bring just such a lawsuit in this case.  If the Court of Appeals had addressed the merits of the litigation, as I believe it should have done, this controversy would have been settled long ago.

I respectfully dissent from the opinion and judgment of the Court.