HILDE CONSTRUCTION CO., a
Montana Corporation, Plaintiff,

v.

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL NO. 400, a labor organization; and individual members thereof, including George Gordon, President of said labor organization; Vincent Bosh, Business Manager of said labor organization; John Maze, Business Representative of said labor organization; and Randy Siemers, Business Representative of said labor organization, Defendants.

Civ. No. 80–140–BLG.

United States District Court,
D. Montana,
Billings Division.

Sept. 26, 1980.

Donald C. Robinson, Poore, Roth, Robischon & Robinson, Butte, Mont., for plaintiff.

D. Patrick McKittrick, Great Falls, Mont., Kevin A. Campana, Helena, Mont., for defendants.

## MEMORANDUM AND ORDER

BATTIN, Chief Judge.

This action is brought and the Court's jurisdiction is invoked pursuant to Section 301(a) of the Labor Management Relations Act of 1959, 29 U.S.C. § 185(a) (1976).

On August 25, 1980, plaintiff filed its complaint and petition for injunctive relief, alleging violation of a labor agreement entered into between plaintiff, Hilde Construction Co., and defendant, International Union of Operating Engineers, Local No. 400, hereinafter referred to as "Union". Plaintiff employs members of the defendant Union in an industry affecting commerce under the National Labor Relations Act of 1947, 29 U.S.C. §§ 151, *et seq.* (1976). On May 1, 1979, the controlling collective bargaining agreement was executed between plaintiff and defendant. Pursuant to a contract with the Federal Highway Administration for reconstruction of the Red Lodge–Cooke City highway, plaintiff continues to employ members of the Union and members of other unions who are also signatory to the collective bargaining agreement.

On August 22, 1980, a dispute arose between plaintiff and the Union regarding the interpretation and application of the governing collective bargaining agreement hereinafter referred to as the "Agreement".

As a result of this dispute the Union initiated picketing of a subcontractor employed by the plaintiff who was allegedly in violation of the Agreement. Plaintiff alleges that such picketing ultimately caused a continuing work stoppage on plaintiff's construction project. Plaintiff further alleges that such activity by the Union is in violation of no–strike and arbitration clauses provided within the Agreement. It is further alleged that the work stoppage will cause irreparable injury to plaintiff regarding project completion delays and impending adverse weather conditions. Finally, plaintiff prays that the Union be enjoined from any activity that will create a work stoppage and that the Court compel the Union to submit its disputes pursuant to grievance and arbitration procedures provided within the Agreement.

Defendant Union alleges that plaintiff has violated Article 2 of the Agreement by the use of a non–union subcontractor. The Union further avers that the activity that it has engaged in is "informational picketing" authorized by First Amendment free speech concepts, and therefore such activity is lawful and protected.

On August 25, 1980, this Court issued a temporary restraining order enjoining further activity by the Union pending hearing on a preliminary injunction held September 16, 1980.

In any case in which one party to a collective bargaining agreement seeks an order of a court requiring the other party to such agreement to submit a dispute to arbitration, the court must initially establish whether the parties have obligated themselves to arbitrate the dispute. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–547, 84 S.Ct. 909, 912, 11 L.Ed.2d 898 (1963); *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1961). When the parties have agreed to arbitrate, the court must order arbitration. *Amalgamated Clothing and Textile Workers Union v. Ratner Corp.*, 602 F.2d 1363, 1371 (9th Cir. 1979); *Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery Workers Union*, 430 U.S. 243, 249–

250, 97 S.Ct. 1067, 1070–71, 51 L.Ed.2d 300 (1976). There is a strong national policy favoring the orderly resolution of labor-management disputes through arbitration. *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Botica v. Floyd Steel Erectors, Inc.* 485 F.Supp. 334 (N.D.Ill.1980). This policy has resulted in a presumption that doubts regarding the scope of an arbitration clause should be resolved in favor of coverage. *United Steelworkers v. Warrior & Gulf Navigation Co., supra,* 363 U.S. at 582–583, 80 S.Ct. at 1352–53; *Amalgamated Clothing & Textile Workers Union v. Ratner Corp., supra,* 602 F.2d at 1371. This presumption of arbitratability

> should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. . . . In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail
> . . . .

*United Steelworkers v. Warrior & Gulf Navigation Co., supra,* 363 U.S. at 581–585, 80 S.Ct. at 1352–54. An agreement between an employer and union to arbitrate future disputes is valid and enforceable. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). When one party to a collective bargaining agreement refuses to submit a dispute to arbitration, the initial inquiry is whether the agreement requires it to do so. *Gateway Coal Co. v. United Mine Workers of America,* 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); *Piggly–Wiggly Operators Warehouse, Inc. v. Piggly–Wiggly Operators Warehouse Independent Truckdrivers Union, Local No. 1,* 611 F.2d 580 (5th Cir. 1980). Within this context, arbitrability is usually an issue of contract interpretation for the courts. *Local 149 v. General*

*Electric Co.,* 250 F.2d 922 (1st Cir. 1957), *cert. denied,* 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813 (1958). Here, there is no doubt to resolve regarding the Agreement in question. Whether the plaintiff has violated the subcontractor clause contained in Article 2 by subcontracting with a non–union company is clearly within the scope of the arbitration clause which provides for resolution of "any controversy" regarding terms of the Agreement (Article 8, Section 1, Collective Bargaining Agreement). Compulsory arbitration is clearly required in this case.

The Union asserts that its "informational picketing" was in exercise of rights under First Amendment free speech. However, it has long been recognized that qualifications exist regarding the exercise of free speech within the context of labor relations. Picketing "establishes a *locus in quo* that has far more potential for inducing action or nonaction than the message pickets convey." *Building Service Employers Internat'l Union v. Gazzam,* 339 U.S. 532, 537, 70 S.Ct. 784, 787, 94 L.Ed. 1045 (1950). Further, such "compulsive features inherent in picketing" go beyond the scope of "mere communication as an appeal to reason." *Hughes v. Superior Court,* 339 U.S. 460, 468, 70 S.Ct. 718, 723, 94 L.Ed. 985 (1950). Picketing is "not . . . the equivalent of speech as a matter of fact" and "is not its inevitable legal equivalent." *Hughes v. Superior Court, supra,* 339 U.S. at 465–466, 70 S.Ct. at 721. Although most cases discuss the picketing–First Amendment dichotomy in terms of statutory violations of the National Labor Relations Act, § 8(b), it is clear that the right to free speech is not absolute.

> Picketing by an organized group is more than free speech, since it involves control of a particular locality and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated. Hence those aspects of picketing make it the subject of restrictive regulation.

*Bakery Drivers Local v. Wohl*, 315 U.S. 769, 776–777, 62 S.Ct. 816, 819–20, 86 L.Ed. 1178 (1942).

■ The Court must weigh and balance the equitable considerations in any injunction hearing. As set forth below, in the instant case, the facts support the conclusion that a denial of the injunction to the plaintiff will result in more harm than issuance of the injunction against the Union. Therefore the picket is substantially outweighed by the irreparable injury to be suffered by the plaintiff, under standards established in *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). In *Boys Markets*, the United States Supreme Court held that the anti–injunction provisions of the Norris–LaGuardia Act did not prohibit a federal court from enjoining a strike where such a strike was in direct violation of an express "no strike" clause of a collective bargaining agreement in effect between the parties, and where both parties were contractually bound to enter into binding arbitration as to the grievance or dispute that precipitated the strike. *Teledyne Wisconsin Motor v. Local 238*, 530 F.2d 727 (7th Cir. 1976).

■ Here, plaintiff's complaint requests a preliminary injunction to prevent the Union from disrupting a road construction project in violation of a mandatory arbitration clause in the collective bargaining agreement. Under *Boys Markets*, there are four requirements to be met before this Court can issue such an injunction. Each of these four requirements has been met in the case before us, as noted below:

1. The collective bargaining contract between the Union and the employer contains a mandatory arbitration clause. The contract provides as follows:

1) Any controversy arising over the terms of this contract on the job may be settled by negotiation between the employee or employees involved and their employers, consistent with the provisions of this Agreement . . . .

2) If the parties fail in step 1, the matter shall be referred to a board of six

(6) composed of three (3) members of Local 400 or appointed by Local 400, and three (3) members from the Montana Contractors Association, Incorporated, or three (3) members designated by the Employer, hereafter referred to as the Grievance Board . . . .

4) Pending the settlement of the controversy or dispute as provided in this Article and while the grievance procedure for which provision is here made is invoked, there shall be no strike, lockout, slowdown, or other interference with the work of the Employer affected or of any other Employer bound by these articles . . . . (Collective Bargaining Agreement, Article 8, Sections 1, 2 and 4.)

2. The collective bargaining contract also contains a no–strike clause. The contract provides as follows:

It is mutually agreed that there shall be no strikes, lockouts or cessation of work by either party on account of labor difficulties during the life of this contract until the herein stated methods of settlement have become exhausted . . . . (Collective Bargaining Agreement, Article 7.)

3. The dispute here, involving a subcontractor's hiring of a non-union personnel, is subject to mandatory arbitration. The contract provides as follows:

The Employer agrees that contractors to whom subcontracts are let shall be required to comply with all the requirements and intents of this Agreement and shall continue to do so throughout all parts of their subcontract work. (Collective Bargaining Agreement, Article 2.)

4. Finally, the Court having considered the evidence presented by plaintiff at the September 16, 1980, hearing, finds that plaintiff would probably succeed in a suit upon the merits as outlined above. In addition, irreparable injury to plaintiff will undoubtedly occur unless the Union is enjoined from its picketing activity since the picketing will probably shut down the construction project altogether, costing plaintiff thousands of dollars per day. The no–strike clause is the *quid pro quo* which the

plaintiff obtained for agreeing to submit to compulsory arbitration. To allow the Union to abandon its remedy of arbitration in order to disregard the no–strike clause would render the Collective Bargaining Agreement illusory and would subvert and circumvent the policy favoring the peaceful settlement of labor disputes by arbitration. *AVCO Corporation v. Local 787, United Auto Workers*, 459 F.2d 968 (3rd Cir. 1972). The Agreement makes it clear that both parties have committed themselves to the binding arbitration of disputes arising under the Agreement.

Since each of the four *Boys Markets* requirements has been met, this Court thus possesses the jurisdiction to issue an injunction pursuant to 29 U.S.C. § 185(a) (1976), conferring a federal court with jurisdiction for suits alleging violations of a collective bargaining contract. *See Edward L. Nezelek, Inc. v. Local Union No. 294*, 342 F.Supp. 507, 510 (D.N.Y.1972) (picketing by Union in violation of mandatory arbitration clause enjoined).

In summary, the Court finds that the language of the Collective Bargaining Agreement intended that both parties be mutually bound to arbitrate grievances arising under that Agreement. Further, the Court finds that all the prerequisites for injunctive relief have been met for the issuance of a preliminary injunction pursuant to the *Boys Markets* exception to the Norris–LaGuardia Act.

IT IS THEREFORE ORDERED that a preliminary injunction be, and the same hereby is, granted to the plaintiff.

The Clerk is directed to enter judgment in favor of plaintiff and against defendant in accordance with this Memorandum and Order.