**Eurice NIBBS, Appellant**

v.

**Otis FELIX, Commissioner of Public Safety, Government of the Virgin Islands.**

**No. 83–3323.**

United States Court of Appeals, Third Circuit.

Argued Dec. 7, 1983.

Decided Jan. 31, 1984.

Benjamin A. Currence, Pallme & Mitchell, Charlotte Amalie, St. Thomas U.S.A. V.I., for appellant.

Laurence Ramer, Dept. of Law, Government of the V.I., Charlotte Amalie, St. Thomas U.S.A. V.I., for appellee.

Before HUNTER, WEIS, and ROSENN, Circuit Judges.

**OPINION OF THE COURT**

ROSENN, Circuit Judge.

This case requires us to decide whether a policewoman must prove her claim to promotion under the grievance and arbitration procedures of an expired collective bargaining agreement or may pursue statutory relief before the Government Employees Service Commission (GESC). GESC concluded that the grievance and arbitration procedures under the contract survived the expiration of the contract term and by order dated August 27, 1982 directed the parties

to proceed, if the appellant so desired, to final and binding arbitration. The appellant, Eurice Nibbs, however, petitioned the District Court of the Virgin Islands for review. The district court denied the petition for review. Nibbs timely appealed to this court. We affirm.

### I.

In June 1982, the police department in the Virgin Islands promoted some of its employees to the position of sergeant. Eurice Nibbs was not promoted; she claims that others who stood lower on the eligibility list (based on a promotion examination) were advanced. Nibbs consulted a lawyer who advised her that, even though she wished to pursue independently a grievance with the Government Employees Services Commission, she might be required to proceed under the grievance procedures of a 1978 written collective bargaining agreement between the Department of Public Safety and the Police Benevolent Association, Service Employees International Union, and Local 816 (PBA). Nibbs preferred to pursue her statutory remedies rather than to arbitrate. She timely filed a letter of appeal with GESC pursuant to the Virgin Islands statutory procedures. To preserve her rights, she also requested her union representative to initiate grievance proceedings on her behalf within the three days allotted under the collective bargaining agreement.

The collective bargaining agreement between the Department of Public Safety and the Police Benevolent Association expired a year before Nibbs brought her grievance. Nibbs argues that employees were therefore not required to pursue the grievance procedures of the expired contract.

Nibbs emphasizes that prior to the implementation of the collective bargaining agreement, employees with grievances could bring them before GESC under subchapter IV of the personnel merit system, V.I. Code Ann. tit. 3, §§ 521–533 (1967 & Supp.1982). Act 4251 of the Virgin Islands legislature, however, implemented the collective bargaining agreement and provided:

Notwithstanding any provision of law to the contrary, the conditions of employment of all … police … shall be governed through June 30, 1981, by the terms of the Agreement. . . .

1978 V.I. Acts 4251.

The law suspended the GESC procedures for remedying grievances in favor of the exclusive grievance procedures established in the agreement. Nibbs maintains that the personnel merit system resumed its effectiveness as of July 1, 1981, and that it provided Nibbs with a statutory remedy and grievance procedure independent of the contract.

Act 4440 was enacted in 1980, during the term of the collective bargaining agreement. It provides in pertinent part: "The benefits and privileges conferred upon public employees by Title 3, chapter 25 of this Code [personnel merit system] shall be applicable to public employees covered by a negotiated bargaining agreement only to the extent such benefits and privileges are specifically provided in such agreement." V.I. Code Ann. tit. 24, § 374(e) (Supp.1982). This law repeals any statutory avenue of relief to which an employee covered by a collective bargaining agreement might have been entitled under the old personnel merit system. The legislature, having granted the employees grievance procedures under the personnel merit system, was free to rescind them with the new law, especially as they had already been superseded by the operative collective bargaining agreement. Contrary to Nibbs's argument, the date listed in Act 4251 implementing the agreement was included to bind the parties through June 30, 1981—not to preclude an extension of the agreement or to limit judicial doctrines that mandate the application of grievance procedures after the expiration date of a contract.

### II.

Nibbs also argues that the source of her rights is the personnel merit system and not the contract, even if the contract were in effect. Because the labor contract grants the employer control over promotions under

the management rights clause, section 11.1, Nibbs maintains, "the effect of Sections 11.1 and 11.2[1] is to carve out an express exception from the coverage of the Agreement for matters of promotion." We disagree. Section 11.1 is a common management prerogative clause and in no manner excludes grievances over promotions. Nibbs's argument is also undercut by section 11.2 in the contract indicating that nothing in the agreement limits "the rights, duties and purposes of the Employer as set forth in the Virgin Islands Code ...." This statement may render some of the protections of the personnel merit system operable despite the implementation of the agreement. See V.I. Code Ann. tit. 24, § 374(e) (Supp.1982). This question, however, is one for the arbitrator if the arbitration procedures are in effect. The parties may have retained some or all of the substantive provisions of the personnel merit system by including section 11.2. They eliminated the procedural provisions, however, by incorporating the mandatory grievance and arbitration procedures in the collective bargaining agreement.

### III.

The district court in this case concluded that Nibbs's only avenue of redress was under the grievance and arbitration provisions of the expired contract. The court therefore upheld GESC. Noting that the same contract was involved in both cases, GESC relied on *Daniel v. Government of the Virgin Islands,* Civ. No. 82–24 (D.V.I. July 19, 1982), as authority that promotion disputes are covered by the grievance procedures of the 1978 collective bargaining agreement between the Department of Public Safety and the PBA. *Daniel* in turn was predicated upon the Court's landmark decision in *Nolde Brothers, Inc. v. Local 358, Bakery & Confectionery Workers Union,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). *Nolde* noted the "well-established federal labor policy favoring arbitration" and the "strong presumption favoring arbitrability." *Id.* at 254, 97 S.Ct. at 1073. *Nolde, supra* at 252, 97 S.Ct. at 1072, and our decision in *Federated Metals Corp. v. United Steelworkers of America,* 648 F.2d 856, 961 (3d Cir.), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981), both held that when parties have agreed to a broad arbitration clause, the duty to arbitrate survives termination of the agreement if the dispute arises under the expired agreement.

The question, therefore, at this point is whether Nibbs's promotion dispute arose under the 1978 contract. The contract by its terms plainly expired on June 30, 1981. Nibb's promotion dispute arose in June 1982 when she learned that the Department of Public Safety had, in her opinion, "selected six officers from the May 21, 1982 list of eligibles who stood lower on the list than she." Her dispute, therefore, does not arise under the expired contract unless the "list of eligibles" was prepared or structured under the 1978 contract.[2] In the abbreviated record we have before us, it is not clear that the dispute arises under the contract.

This does not end the matter, however. Although the 1978 collective bargaining

---

1. The pertinent provisions of sections 11.1 and 11.2 are:

    11.1 The Employer retains the right to manage the Government operations entrusted to it, and shall have the right to direct its employees; to promote, hire, transfer, and retain employees in positions with the Employer; and to suspend, promote, discharge, or take other disciplinary measures against any employee for just cause. . . .

    11.2 Any departmental or managerial function not limited by the terms of this Agreement is reserved to the Employer. The parties agree that nothing contained in this Agreement shall limit, hinder, or in any abro-

gate the rights, duties and purposes of the Employer as set forth in the Virgin Islands Code and regulations promulgated pursuant thereto.

2. We also reject the Government's argument that Nibbs waived the statutory grievance procedures when she filed a protective grievance under the contract. Nibbs made her position very clear at the time. She preferred to proceed before GESC and reserved her rights so to do. She did not thereby waive her statutory right to appeal to GESC. *See Germany v. River Terminal Ry.,* 477 F.2d 546, 547 (6th Cir. 1973).

agreement had expired, the Department asserts that the PBA and the Department had informally extended the arbitration provisions of the contract. In this case, the shop steward for the PBA initiated grievance procedures under the collective bargaining agreement and on July 9, 1982, "The Commissioner of Public Safety responded to the request of Officer Rivera [shop steward] to entertain a hearing upon Petitioner's grievance by scheduling a meeting for July 14, 1982." The parties proceeded with the grievance hearing as scheduled and the Commissioner "denied relief to the Petitioner in a letter of July 19, 1982." By letter dated August 9, 1982 to the Department of Public Safety, Shop Steward Rivera demanded arbitration of the grievance pursuant to the contractual agreement.

Thus, even though the written contract by its terms expired on June 30, 1981, the Department of Public Safety and the PBA, as parties to the contract, informally extended its grievance and arbitration provisions. As Nibbs alleged in her petition for review (¶ 5), she requested the shop steward to pursue the grievance procedures under the contract because he had informed her that the Union and the Department had a "working agreement" permitting such action under the contract. The parties to the contract confirmed this arrangement when they promptly engaged in and followed its grievance provisions. The PBA, as the sole and exclusive bargaining agent, had the ultimate power in behalf of the employees in the bargaining unit to extend the grievance and arbitration provisions of the contract beyond the terminal date set forth in the contract. And "[t]he Union, as the sole and exclusive bargaining representative, had the ultimate power to make a fair and responsible determination as to whether it would invoke the arbitration provision available under the collective bargaining agreement." *Jackson v. Temple University,* 721 F.2d 931 at 933 (3d Cir.1983). These determinations to extend the grievance and

arbitration provisions of the contract and to proceed under them are binding upon Nibbs.[3]

We have fully considered each of the arguments made by Nibbs orally and in her brief and conclude that the grievance and arbitration procedures under the contract were operative.

Accordingly, the judgment of the district court will be affirmed. Each side to bear its own costs.

---

**3.** The district court of the Virgin Islands has twice previously ruled that promotion disputes are covered by the collective bargaining grievance procedures. See *Daniel v. Gov't of the* *Virgin Islands,* Civ. No. 82–24 (D.V.I. July 19, 1982); *Georges v. Branch,* Civ. No. 79–160 (D.V.I. Feb. 19, 1980).