**WILLIAM F. WALSH ELECTRICAL CONSTRUCTION, INC.**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION 98.**

**Civ. A. No. 84–1323.**

United States District Court,
E.D. Pennsylvania.

July 3, 1984.

---

John W. Nilon, Jr., Media, Pa., for plaintiff.

Michael N. Katz, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

This is a suit by an electrical contractor, William F. Walsh Electrical Construction, Inc., against a labor union, International Brotherhood of Electrical Workers, Local Union 98, under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiff seeks to be made whole by an award of money damages for breach of a collective bargaining agreement between the parties. Presently before the court is defendant's motion for judgment on the pleadings. For the reasons set forth below, the motion will be granted.

Although the facts surrounding the underlying dispute are contested, for purposes of this motion the factual allegations of the complaint will be accepted as true and may be briefly summarized. Matters outside the pleadings which have been raised in the parties' briefs have not been considered.

Between December, 1981 and November, 1983, plaintiff was an electrical subcontractor at several job sites in the City of Philadelphia. At each of these sites, plaintiff employed members of defendant Local 98. During this time, plaintiff and defendant were parties to consecutive collective bargaining agreements. The first agreement expired May 1, 1983, and was replaced by the second agreement which is effective until May 2, 1985.

Plaintiff claims that during the performance of the work and contrary to the provisions of these agreements, agents of Local 98 committed the following acts: refused to allow plaintiff to designate its own foreman; refused to allow plaintiff to hire and retain the most productive employees available; refused to allow plaintiff to hire employees except through an unauthorized referral procedure run by Local 98; refused to accept and execute plaintiff's lawful work rules; refused to accept layoffs; and, required plaintiff to retain an excessive number of supervisory employees. Plaintiff asserts that Local 98's conduct caused plaintiff to: hire additional and unnecessary employees, including supervisors; schedule additional and unnecessary man hours; pay additional and unnecessary premium time; sustain unnecessary job penalties; suffer loss of present and prospective work; have a less skilled and productive work force than other competing subcontractors; and have a work force characterized by excessive turnover. By this lawsuit plaintiff seeks damages under a breach of contract theory for alleged labor cost overruns in the amount of $320,000.00.

In moving for judgment on the pleadings, Local 98 points out that the collective

bargaining agreements under which plaintiff claims establish a dispute resolution mechanism which covers the disputes at hand. Local 98 argues that plaintiff's suit is barred in view of this contractually agreed upon method for settling disputes, and that plaintiff's remedy is to proceed thereunder. Plaintiff maintains, however, that the dispute resolution mechanism set out in the parties' agreements was not intended to resolve damage claims. Rather, it is limited to resolving questions of contract interpretation. Plaintiff's position is that even assuming a particular dispute must be submitted to the contractual grievance procedure, damage issues arising from that dispute need not be submitted to the grievance procedure and can be the basis for a separate suit in a court of law. The pertinent provisions of the collective bargaining agreements are as follows. The agreement currently in effect provides:

*Section 1.04.* There shall be no stoppage of work either by strike or lockout because of any proposed changes in this Agreement or dispute over matters relating to this Agreement. All such matters must be handled as stated herein.

*Section 1.05.* There shall be a Labor-Management Committee of three (3) representing the Union and three (3) representing the Employers. It shall meet regularly at such stated times as it may decide. However, it shall also meet within forty-eight (48) hours when notice is given by either party. It shall select its own Chairman and Secretary.

*Section 1.06.* All grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within forty-eight (48) hours, they shall refer the same to the Labor-Management Committee.

*Section 1.07.* All matters coming before the Labor-Management Committee shall be decided by a majority vote. Four (4) members of the Committee, two (2) from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting.

*Section 1.08.* Should the Labor-Management Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding on both parties hereto.

*Section 1.09.* When any matter in dispute has been referred to conciliation or arbitration for adjustment, the provisions and conditions prevailing prior to the time such matters arose shall not be changed or abrogated until agreement has been reached or a ruling has been made.

Complaint, Exhibit "A."

The collective bargaining agreement in effect at all times in question prior to May 1, 1983, provided:

Section 4. (a) There shall be a Labor-Management Committee of three (3) representing the Union and three (3) representing the Employer. It shall meet regularly at such stated times as it may decide, or within forty-eight (48) hours after notice is given by either party. It shall select its own Chairman and Secretary.

(b) All disagreements, or claims of violations of this Agreement or working rules, which cannot be adjusted between the duly authorized representatives of the Union and the Employer, shall be referred to this Committee for decision by majority vote.

(c) In the event the Committee is unable to render a decision by majority vote, or for any reason adjust a matter in dispute, it shall be referred to the Council on Industrial Relations for the Electrical Construction Industry of the United States and Canada, whose decision shall be final and binding on all parties.

Complaint, Exhibit "B."

The question presented here is whether plaintiff must utilize the above

grievance procedure to resolve its present claim for damages. In deciding this issue the court is mindful of the well established federal labor policy which favors arbitration and other similar procedures chosen by the parties as the desirable means of resolving differences under a collective bargaining agreement. *Nolde Brothers, Inc. v. Local No. 358 Bakery and Confectionery Workers Union,* 430 U.S. 243, 256, 97 S.Ct. 1067, 1074, 51 L.Ed.2d 300 (1977).

A collective-bargaining agreement erects a system of industrial self-government; grievance and arbitration provisions in such an agreement make that collective-bargaining process continuous: "Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties."

*Id.* (Stewart, J. dissenting) (citations omitted).

To effectuate this policy, the Supreme Court has created a strong presumption favoring arbitrability. Under this presumption, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). The Supreme Court most recently reaffirmed this presumption in *Moses H. Cone Hospital v. Mercury Construction Co.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

In the present case the broad scope of the parties' grievance mechanism is plain. The agreement currently in force states that "[t]here shall be no stoppage of work either by strike or lockout because of any ... dispute over matters relating to this Agreement. *All* such matters *must* be handled as stated herein." Complaint, Exhibit "A" (emphasis added). The agreement further provides that *"[a]ll* grievances or questions in dispute shall ..." be initially submitted to representatives of each of the parties for adjustment. *Id.* (emphasis added). The previous agreement similarly stated that it covered *"[a]ll* disagreements, or claims of violations of this Agreement or working rules...." Complaint, Exhibit "B" (emphasis added). Further, both agreements provide that if any matter cannot be resolved either initially by representatives of the parties, or at the next step by the vote of a labor-management committee, then it shall be referred to the Council on Industrial Relations for the Electrical Contracting Industry whose decision shall be final and binding.

Clearly the grievance mechanism established by the parties covers the request for contract interpretation underlying plaintiff's claim for damages, and under the presumption established by federal labor law plaintiff is required to use this mechanism to resolve his contract dispute. The critical question of whether the damage claim itself may be split off and separately litigated in this forum is not expressly addressed by the parties' agreements. The court notes that in fact there are no reservations or exclusions of any kind concerning the types of issues covered by the grievance mechanism. Omission of an express exclusion for damage issues in the face of the well known and entrenched federal policy which favors resolution of disputes by contractually agreed upon methods, such as arbitration, and which resolves all doubts in favor of arbitration, leads the court to conclude that plaintiff should not be permitted to proceed piecemeal. As recently stated by the court in *Ceres Marine Terminals, Inc. v. International Longshoremen's Association,* 683 F.2d 242, 247 (7th Cir.1982), "any exclusion of particular parties or issues from coverage by an agreement's arbitration provisions should not be inferred from the language of the agreement, but must be stated explicitly in the agreement." In the present case there is nothing in the language of the agreement to indicate that damage issues are not to be simultaneously considered with the merits of the underly-

ing dispute. Thus, the court agrees with Local 98 that plaintiff's remedy is to utilize the grievance mechanism set forth in the collective bargaining agreement. Plaintiff's complaint will accordingly be dismissed.

An appropriate Order will be entered.