806 F.2d 1552
 124 L.R.R.M. (BNA) 2294, 105 Lab.Cas. P 12,129
 LOCAL UNION NUMBER 2487, UNITED MINE WORKERS OF AMERICA;
and District 20, United Mine Workers of America,
unincorporated associations, Plaintiffs-Appellees,
v.
BLUE CREEK MINING COMPANY, INC., a corporation, Defendant-Appellant.
 No. 86-7161.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 5, 1987.
 
 Peyton Lacy, Jr., Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for defendant-appellant.
 William E. Mitch, Cooper, Mitch & Crawford, Birmingham, Ala., for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before KRAVITCH and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This is an appeal from an order of the United States District Court for the Northern District of Alabama requiring the appellant to process certain grievances pursuant to a labor agreement.
 
 
 2
 This case originated on January 21 and January 23, 1985, when David G. Thomas, Kenneth D. Swann, W.R. McCay and E.C. Clements (the "grievants") completed grievance forms and sought to have them processed in accordance with their collective bargaining agreement, the 1981 National Bituminous Coal Wage Agreement ("NBCWA"). The grievants were employed by Nickel Plate Mining Co., Inc. ("Nickel Plate"), a wholly owned subsidiary of NP Mining Co., Inc. NP Mining Co., Inc. is also the parent company of Blue Creek Mining Co., Inc. ("Blue Creek"). Both Nickel Plate and Blue Creek were signatories to the 1981 NBCWA.
 
 
 3
 In June and August, 1982, the grievants were laid off from Nickel Plate. Because the NBCWA provides that laid off employees have a right to be placed on a panel for employment at other mines of the same employer, these men each filed a panel form for employment with Blue Creek within five days of his layoff.
 
 
 4
 The 1981 NBCWA expired by its terms on October 1, 1984. A 1984 NBCWA was executed but Nickel Plate was not a signatory to this agreement. For this reason the grievants' local union, UMWA 1873, went on strike against Nickel Plate and is still on strike. Blue Creek, however, did sign the 1984 NBCWA and is operating under this agreement at this time.
 
 
 5
 As noted earlier, in January, 1985 the grievants completed grievance forms addressed to Blue Creek. Each grievant alleged that "Blue Creek has hired people off the street to perform a job that I can perform and have listed on my panel form." Blue Creek refused to process these grievances and Local Union 2487, the Blue Creek labor union, instituted the present action to compel resolution in compliance with the 1981 NBCWA. By order of February 4, 1986, the district court granted the plaintiffs' motion for summary judgment, and ordered that the dispute be processed pursuant to the 1984 NBCWA.
 
 
 6
 The primary issue on appeal is whether the district court erred in ordering Blue Creek to process this dispute under the terms of the 1984 NBCWA. We agree with the district court that the grievants are entitled to have their grievances processed, but hold that such grievances must be processed in accordance with the 1981 agreement.
 
 
 7
 Any discussion of this issue must begin with recognition that federal labor law clearly favors the settlement of labor disputes by the grievance procedures contained in the collective bargaining agreement.
 
 
 8
 Section 203(d) of the Labor Management Relations Act ... states, 'Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement....' That policy can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play.
 
 
 9
 United Steelworkers v. American Mfg. Co., 363 U.S. 564, 566, 80 S.Ct. 1343, 1345-46, 4 L.Ed.2d 1403, 1406 (1960). In this regard the Supreme Court recently reiterated the rule that it is up to a court to decide whether a grievance raises an issue covered by the contract, but that in making this decision the court should not be concerned with the merits of the claim. AT & T Technologies, Inc. v. Communication Workers, --- U.S. ----, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).
 
 
 10
 In the present action, both the 1981 and 1984 contracts contain the following provision with regard to grievance procedures:
 
 
 11
 Should differences arise between the Mine Workers and an Employer as to the meaning and application of the provisions of this agreement, or should differences arise about matters not specifically mentioned in this Agreement, or should any local trouble of any kind arise at the mine, an earnest effort shall be made to settle such differences at the earliest practicable time.
 
 
 12
 Article XXIII, Sec. c (1981 and 1984 NBCWA). The contract outlines the grievance procedures necessary for resolution, with the final step being a referral to the district arbitrator.
 
 
 13
 Despite both the preference for settlement under the collective bargaining agreement, and this broad contractual language, Blue Creek advances three arguments to support its contention that processing pursuant to the contract is inappropriate in this case.
 
 
 14
 Blue Creek first urges that it was never an "employer" of the four grievants and that it has not contracted (under either the 1981 or 1984 NBCWA) to process grievances by individuals who are not "classified employees" at its mine. While it is undisputed that these four grievants have never been employed by Blue Creek, the union maintains that Blue Creek is their employer for purposes of their grievance, based on the following language contained in each NBCWA:
 
 
 15
 Employees laid off in a reduction in force shall at their request be placed on the panel of the other mine or mines of the same Employer in the same UMWA district and the Employee's choice of one additional UMWA district which is geographically contiguous to the UMWA district in which he was employed, provided that Employees laid off after the effective date of this Agreement shall make their requests in writing within the five (5) calendar days following their layoff. Signatory companies and coal producing divisions thereof and wholly owned and controlled coal producing subsidiaries and wholly owned and controlled coal producing affiliates shall be treated as one and the same Employer for panel rights purposes.
 
 
 16
 Article XVII, Sec. k, (1981 and 1984 NBCWA) (emphasis added). Under this provision it is clear that Nickel Plate and Blue Creek, as wholly owned subsidiaries of NP Mining Co., Inc., are both "employers" for purposes of the grievants' panel rights. Because the grievants complain of an alleged violation of these panel rights, Blue Creek is an employer of these grievants for purposes of these grievances.
 
 
 17
 Blue Creek next argues that these grievants are striking employees, so that their grievances do not fall within the panel rights provision, which clearly applies only to laid-off employees. It is undisputed that the local union to which these grievants belong is on strike against Nickel Plate and has been since October 1, 1984. However, it is also undisputed that the grievants were laid off prior to October 1, 1984, and were in layoff status at the time the union went on strike. Whether, on these facts, the grievants were entitled to the panel rights they claimed is a question which goes to the merits of their grievances, and not to whether the grievances are to be resolved pursuant to the collective bargaining agreement. The only question for the court is whether the parties meant to submit disputes over the coverage afforded by Article XVII to contractual resolution. AT & T Technologies, --- U.S. ----, 106 S.Ct. 1415, 89 L.Ed.2d 648. Based on the broad grievance clause contained in the collective bargaining agreement, the answer to this question is yes. We find no explicit contractual exclusion of this issue from arbitration nor has the appellant "adduce[d] 'the most forceful evidence' to this effect from the bargaining history." Id., at ----, 106 S.Ct. at 1420, 89 L.Ed.2d at 659.
 
 
 18
 Finally, Blue Creek contends that any rights available to the grievants accrued under the 1981 NBCWA and that any such rights expired with the 1981 agreement. For this reason it claims that the district court abused its discretion in ordering the grievances to be processed under the 1984 NBCWA.
 
 
 19
 We agree that it was error to order the processing of the grievances pursuant to the 1984 agreement. Any rights possessed by these grievants are attributable to the 1981 NBCWA because their actual employer, Nickel Plate, was a signatory to, and they were therefore covered by, that agreement. Nickel Plate was not a signatory to the 1984 agreement and they cannot have any rights under the latter agreement. However, the grievants' panel rights accrued in 1982 when they were laid off and filed their panel rights forms and, accordingly, survived the expiration of the 1981 agreement.
 
 
 20
 The Supreme Court addressed the issue of the survival of contractual rights following the termination of the contract in Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). The issue presented in Nolde was whether a party to a contract may be required to arbitrate a contractual dispute over severance pay pursuant to the arbitration clause of that agreement even though the dispute, although governed by the contract, arose after its termination. The Court concluded that arbitration was required, relying on the strong presumption of arbitrability:
 
 
 21
 [T]here is little reason to construe this contract to mean that the parties intended their contractual duty to submit grievances and claims arising under the contract to terminate immediately on the termination of the contract.... In short, where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication.
 
 
 22
 Id., at 254-55, 97 S.Ct. at 1073-74, 51 L.Ed.2d at 310-11.
 
 
 23
 In the present case it is obvious that the controversy is over a provision of the expired contract, specifically Article XVII, covering panel rights. Finding nothing to negate the presumption of non-judicial resolution, despite expiration of the contract, we affirm the judgment of the district court requiring the grievances to be processed. We reverse the judgment to the extent it orders relief pursuant to the 1984 NBCWA, finding that any rights of the grievants arose from the 1981 agreement.
 
 
 24
 AFFIRMED in part; REVERSED in part.