**Leland ST. JAMES, et al., Plaintiffs,**

**v.**

**SCOT LAD FOODS, et al., Defendants.**

**No. 85 C 10128.**

United States District Court,
N.D. Illinois, E.D.

Jan. 28, 1987.

Ronald S. Samuels, Washington, Kennon, Hunter & Samuels, Chicago, Ill., for plaintiffs.

Barry L. Chaet, Timothy G. Costello, Krukowski, Chaet, Beck & Loomis, S.C., Milwaukee, Wis., Edward S. Freud, Ruff, Weidenaar & Reidy, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiffs brought this action in Cook County Circuit Court after defendant Scot Lad Foods, Inc. ("Scot Lad") terminated their employment as security personnel. The gist of plaintiffs' complaint is retaliatory discharge. Count I of the complaint alleges that they were discharged without good cause, in violation of an implied contract with Scot Lad. Count II alleges that they were discharged in violation of an implied covenant of good faith with Scot Lad. Count III is captioned as a breach of contract claim, but it appears to state a tort claim for wrongful discharge in violation of the public policy of Illinois. Count IV is captioned as an unfair competition claim, but it appears to state a claim for the tort of outrage. All four counts are characterized as arising under state law.

Defendants removed the case to federal court on the ground that if the complaint states a claim at all, the claim arises under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Defendant now moves for summary judgment, claiming that plaintiffs' claims are preempted by section 301, that plaintiffs have failed to exhaust their remedies under a collective bargaining agreement between Scot Lad and plaintiffs' union, and that there is no evidence that the union breached its duty of fair representation. The

motion is denied, but only because facts which this court believes to be material have not been addressed by the parties.

## FACTS

Plaintiffs were employed as security personnel by Scot Lad and Scot Lad's Lansing, Illinois facilities. Their employment was governed by a collective bargaining agreement executed by Scot Lad and the Service Employees International Union Local 189 (Local 189) on April 1, 1979. The contract was renewed on April 1, 1982 and remained in force until March 31, 1985. In 1983, Local 189 merged with General Service Employees Union Local 73 (Local 73), but the merger apparently did not affect the collective bargaining agreement.

Plaintiff Richard Farmer served as union steward at Scot Lad for Local 189 from 1974 until 1983. Mr. Farmer continued to serve as union steward after Local 189 merged with Local 73 in 1983, until he was discharged by Scot Lad on June 22, 1985. Defendant Howard Wahl is director of security at Scot Lad and part of his duties included supervising the plaintiffs. Both Farmer and Wahl participated in the negotiation and renewal of Local 189's collective bargaining agreement.[1]

Plaintiffs continued to work for Scot Lad after the collective bargaining agreement expired on March 31, 1985. Scot Lad continued to apply the terms of the agreement "until it implemented, at impasse, its proposal to subcontract the security work performed by the plaintiffs as part of the bargaining unit represented by Local 189" (Wahl aff. ¶ 2).[2] Defendants maintain that the terms of Local 189's collective bargaining agreement controlled plaintiffs' employment until the impasse. The plaintiffs were discharged on June 22, 1985.

Local 189's collective bargaining agreement in part provides that "[t]he Employer agrees that it will not discharge any em-

ployee ... without justifiable cause." Article 7, section 4. The agreement also specifies procedures to be followed in handling grievances:

ARTICLE 6—ARBITRATION AND GRIVANCE [sic] MACHINERY

Should any difference, disputes or complaints arise over the interpretation or application of the contents of this Agreement, there shall be an earnest effort on the part of both parties to settle such promptly through the following steps:

*Step 1.* By conference between the steward, sergeant and the employee or employees involved.

*Step 2.* By conference between the steward, sergeant, personnel manager and employee or employees involved.

*Step 3.* By conference between the steward, personnel manager, sergeant, employee and an official of the union.

*Step 4.* In the event the previous steps fail to settle the complaint or grievance, the union may request that the matter be referred to a Board of Arbitration.

Plaintiffs allege that they were discharged in retaliation for filing a grievance concerning the wages they were being paid for Sunday work. Article 9, section 4, of the collective bargaining agreement states in part that "Sunday work shall be compensated at the rate of two (2) times the regular rate." All of the plaintiffs regularly worked on Sundays from April 1, 1979 until they were discharged (complaint ¶ 12), but Scot Lad paid them at their regular rate of pay instead of double-time (complaint ¶¶ 13, 14). On August 22, 1984, the plaintiffs filed a grievance to collect the difference between double-time pay and regular pay for the Sundays they had worked (Farmer aff. ¶ 6).

Defendant John Lowe, Scot Lad's warehouse manager, met with the union to discuss plaintiffs' back pay grievance on Octo-

---

**1.** Apparently Local 73 replaced Local 189 as plaintiffs' exclusive bargaining agent after the two locals merged in 1983, but the collective bargaining agreement does not appear to have been amended to reflect the change.

**2.** The record contains no details of the "impasse" or of any negotiations for a new collective bargaining agreement.

ber 12, 1984. Lowe promised to schedule another meeting with Scot Lad's top management to resolve the dispute, but the meeting never took place (Farmer aff. ¶ 7). Instead, Lowe told Farmer on October 31, 1984, that if the plaintiffs did not accept Scot Lad's offer to settle the back pay dispute for $350 each, they would be terminated (Farmer aff. ¶ 8). Defendants dispute that this threat was ever made (defendants' brief in support of motion for summary judgment at 3, n. 1).

On January 11, 1985, Scot Lad denied plaintiffs' back pay grievance in writing. Scot Lad's position was that plaintiffs' claim for double-time pay on Sundays was based on language that applied only to chauffeurs (Wahl aff. ¶¶ 5–7 and exh. A). Plaintiffs dispute Scot Lad's interpretation of the collective bargaining agreement (Farmer aff. ¶¶ 4–5).

On June 6, 1985, plaintiffs met with Richard Wesley of Local 73, their business agent, and asked him to pursue their grievance and the resulting termination of their employment with Scot Lad (Farmer aff. ¶ 10). Wesley told the plaintiffs there was nothing he could do. To cut payroll costs, Scot Lad had decided to hire a subcontractor, North Central Security (North Central), to handle their security work. Wesley also told the plaintiffs that he was North Central's business agent and that he could get the plaintiffs jobs at North Central at $3.00 per hour and $3.50 per hour after sixty days. The plaintiffs apparently declined Wesley's offer, but repeated their request that Wesley take action to resolve their back pay grievance.

On June 10, 1985 Farmer wrote to Wesley and repeated plaintiffs' request that Wesley attempt to settle their grievance. On August 13, 1985, after Scot Lad discharged the plaintiffs and installed North Central to replace them, Farmer again asked Wesley to settle plaintiffs' claim for back pay. Wesley told Farmer there was nothing he could do.

According to the defendants, the plaintiffs never filed a grievance under the collective bargaining agreement protesting their termination or Scot Lad's subcontracting of the security work they had done (Wahl aff. ¶ 4). Nor have they filed an unfair labor practice charge with the National Labor Relations Board (Wahl aff. ¶ 5). Instead they filed this action on November 8, 1985.

## DISCUSSION

### I. Preemption and its Consequences

■ There is no longer any dispute that plaintiffs' claims arise under section 301 of the LMRA. *See Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985) ("when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim ... or dismissed as pre-empted by federal labor-contract law."). All four counts of plaintiffs' complaint essentially depend on whether Scot Lad breached a term of a collective bargaining agreement by terminating plaintiffs' employment without just cause. Although Local 189's collective bargaining agreement with Scot Lad expired on March 31, 1985, Scot Lad continued to apply the agreement until it terminated the plaintiffs in favor of North Central Security. Moreover, if Scot Lad had unilaterally changed the terms of plaintiffs' employment before reaching an impasse with plaintiffs' collective bargaining unit, it probably would have committed an unfair labor practice. *See* 29 U.S.C. § 158(a); *National Metalcrafters v. McNeil,* 784 F.2d 817, 826–27 (7th Cir.1986). Thus, whether plaintiffs were wrongfully terminated depends on the terms of the expired collective bargaining agreement, and plaintiffs' state law claims are preempted.

■ But defendant is not entitled to summary judgment simply because plaintiffs' state law claims are preempted. Plaintiffs' complaint may be treated as raising section 301 claims despite plaintiffs' failure to characterize them that way. *Cf. Gibson v. AT & T Technologies,* 782 F.2d

686, 688 (7th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986); *Oglesby v. RCA Corp.,* 752 F.2d 272, 276 (7th Cir.1985) (both holding that plaintiffs' failure to characterize a wrongful discharge complaint as stating a federal section 301 claim is not determinative in determining federal removal jurisdiction).

## II. Section 301

■ Section 301 provides for federal court jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce...." 29 U.S.C. § 185(a). Plaintiffs' complaint is not a model of clarity, but it is sufficient to state a claim under section 301. *See Waycaster v. AT & T Technologies, Inc.,* 636 F.Supp. 1052, 1056–57 (N.D.Ill.1986) (just cause provision in collective bargaining agreement encompasses the concept of retaliatory discharge). However, the claim is an extraordinarily narrow one. There would be no § 301 claim if after bargaining in good faith and reaching an impasse Scot Lad terminated the plaintiffs and hired a subcontractor to replace them. Moreover, although Scot Lad had a duty to bargain in good faith with plaintiffs' collective bargaining unit until reaching any impasse relating to future wages, hours and working conditions (including the issue of whether double-time wages would be paid for Sunday work under the new contract), a breach of that duty merely would be an unfair labor practice. Unless Scot Lad also violated the old collective bargaining agreement somehow, there would be no § 301 claim and the National Labor Relations Board would have exclusive jurisdiction over the matter. *San Diego Bldg. Trades v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). The only possible contract violation plaintiffs raise in their complaint is that the parties were not at an impasse on the terms of a new contract; rather Scot Lad refused to execute a new contract solely because the plaintiffs re-

fused to surrender their back pay claims under the old contract. Thus plaintiffs' retaliatory discharge claim only survives in this limited sense.[3]

Defendants have not moved for summary judgment on the merits of the alleged contract violation. Instead they have focused on the procedural hurdles that must be cleared before a § 301 suit may be maintained by individual employees, rather than their union. As the Supreme Court explained in *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), when individual employees sue their employers under § 301, they must show more than a breach of the collective bargaining agreement:

> ... [s]uch a suit, as a formal matter, comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective-bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation.... "... 'To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract, but must also carry the burden of demonstrating breach of duty by the Union.'" ... The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. The suit is thus not a straightforward breach-of-contract suit under § 301 ... but a hybrid § 301/fair representation claim....

462 U.S. at 164–165, 103 S.Ct. at 2290–2291 (citations omitted). In addition, individual employees are ordinarily required to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. *See DelCostello,* 462 U.S. at 163, 103 S.Ct. at 2289; *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

---

**3.** The claim is also probably an unfair labor practice under 29 U.S.C. § 158(a)(3), but under

*Garmon* that issue is within the exclusive jurisdiction of the National Labor Relations Board.

Defendants argue that they are entitled to summary judgment because the plaintiffs have not exhausted their contractual remedies and because their union has not breached its duty to fairly represent them. Defendants' summary judgment motion must be denied because these arguments raise factual issues that cannot be resolved on the record now before the court.

## A. Exhaustion

Defendants first contend that they are entitled to summary judgment because plaintiffs have not exhausted their remedies under Local 189's collective bargaining agreement. Mr. Farmer's affidavit states that the plaintiffs made many attempts to get the union to resolve their claims for double-time wages on Sunday within the grievance machinery created by Local 189's collective bargaining agreement. But plaintiffs' complaint apparently seeks reinstatement and damages from being wrongfully terminated, not back pay for Sundays already worked.[4] Defendants argue that plaintiffs' grievances about Scot Lad's failure to pay them double-time for Sunday did not invoke the grievance machinery for the purposes of settling their wrongful discharge claims. Defendants maintain they are entitled to summary judgment because plaintiffs never filed a separate grievance to protest their terminations.

■ This contention is unpersuasive, based on the record now before the court. On a motion for summary judgment "[a]ll factual inferences are to be taken against the moving party and in favor of the opposing party." *International Administrators, Inc. v. Life Insurance Co. of North America,* 753 F.2d 1373, 1378 (7th Cir. 1985). The record shows that the back pay issue and the wrongful termination issue are closely intertwined and Mr. Farmer's affidavit suggests that the wrongful discharge claim was at least raised in discussions with Mr. Wesley. Thus there is a factual issue as to whether the plaintiffs

attempted to exhaust their grievance and arbitration remedies under their collective bargaining agreement.

■ Moreover, the exhaustion requirement may be excused under certain circumstances:

(1) where the conduct of the employer amounts to a repudiation of the contract, *Vaca v. Sipes,* 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967);

(2) where the union has wrongfully refused to process a grievance, *id.;* and

(3) where exhaustion of contractual remedies would be futile. *Glover v. St. Louis-San Francisco Ry. Co.,* 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969).

*Macon v. Youngstown Sheet & Tube Co.,* 698 F.2d 858, 860 (7th Cir.1983). Farmer's affidavit states that Mr. Lowe threatened to terminate the plaintiffs if they did not settle their back pay claims for $350 each. Although defendants deny that the threat was made, it raises the possibility that Scot Lad repudiated the grievance process in Local 189's collective bargaining agreement. Also, according to Mr. Farmer, Mr. Wesley stated that the only thing he could do about plaintiffs' terminations would be to get them jobs with the North Central Security. Filing another grievance after the union assented to Scot Lad's handling of the matter may very well have been futile. *See Schultz v. Owens-Illinois, Inc.,* 696 F.2d 505, 512 (7th Cir.1982) (pursuit of intraunion remedies futile where, "when the Union assented to [the employer's] rejection of [one plaintiffs'] claim, it in effect adopted a position rejecting the claims of similarly situated plaintiffs").

■ A more serious problem is that any grievance procedures that might have been available to the plaintiffs to protest their terminations would have to be found in Local 189's expired collective bargaining agreement. The court accepts defendant's argument that the terms of the agreement continued to control the employer-employee

---

**4.** Defendants assert that the overtime claims are now barred by the applicable six-month statute of limitations. *DelCostello v. International*

*Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The court agrees.

relationship between Scot Lad and the plaintiffs until the plaintiffs were discharged, but there seems to be no basis for applying the terms of the agreement beyond that time. If the agreement ceased to apply after the plaintiffs were discharged, there may no longer be any grievance or arbitration remedies to exhaust. *Compare Nolde Bros., Inc. v. Local No. 358*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977) (obligation to arbitrate certain issues may survive contract termination) *with Local 703 v. Kennicott Bros. Co.*, 771 F.2d 300 (7th Cir.1985) (obligation to arbitrate does not survive contract termination indefinitely).

## B. Duty of Fair Representation

■ Defendants' second major contention is that there is no evidence that plaintiffs' union breached its duty to fairly represent them. Defendants correctly state that merely rejecting a grievance as without merit is not a breach of fair representation. *See Vaca v. Sipes*, 386 U.S. 171, 191–92, 87 S.Ct. 903, 917–18, 17 L.Ed.2d 842 (1967). Defendants are also correct in pointing out that the union must engage in some sort of deliberate misconduct to breach its duty. *See, e.g., Camacho v. Ritz-Carlton Water Tower*, 786 F.2d 242, 244 (7th Cir.) ("[A union] is not liable ... for careless or boneheaded conduct"), *cert. denied,* —— U.S. ——, 106 S.Ct. 3282, 91 L.Ed.2d 571 (1986); *Hoffman v. Lonza, Inc.*, 658 F.2d 519, 522 (7th Cir.1981). However, an inference of such misconduct is permissible on the record now before the court.

Plaintiffs claim that Local 73 breached its duty to fairly represent them because its representation of North Central Security created a conflict of interest. Defendants correctly argue that union's representation of two groups of employees with antagonistic interests is not in itself a breach of the union's duty to fairly represent either group. In *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), for example, a union represented employees at two different automobile transportation companies. When the two companies consolidated and exchanged certain operations, the union decided to dovetail the seniority lists at the two companies for one of the combined operations. The Supreme Court held that the union's decision did not amount to a breach of its duty of fair representation, even though the decision worked to the detriment of the employees at one of the companies. The Court concluded that

> [a]s far as this record shows, the union took its position honestly, in good faith and without hostility or arbitrary discrimination. ... By choosing to integrate seniority lists based upon length of service at either company, the union acted upon wholly relevant considerations, not upon capricious or arbitrary factors.

375 U.S. at 350, 84 S.Ct. at 372.

However, unlike *Humphrey v. Moore*, the record now before this court is insufficient to reject the inference that Local 73 deliberately and unjustifiably refused to represent the plaintiffs in processing their grievances or in negotiating a new collective bargaining agreement. Also unlike *Humphrey v. Moore*, in which the union adopted "a familiar and frequently equitable solution to ... inevitably conflicting interests," 375 U.S. at 347, 84 S.Ct. at 371, the record here suggests that Local 73 completely abandoned the plaintiffs in favor of North Central Security. On the present record it is also conceivable that the plaintiffs were "on the outs" with Local 73 for refusing to drop their demand for double-time pay on Sundays. *Dober v. Roadway Express, Inc.*, 707 F.2d 292, 294 (7th Cir.1983). Nothing in the record shows that Local 73 took any steps to negotiate the termination of plaintiffs' collective bargaining agreement or plaintiffs' discharge. Nothing discloses the circumstances of Local 189's merger with Local 73 or Local 73's relationship with North Central Security. In short, defendant has failed to foreclose the inference that Local 73 acted with deliberate hostility toward the plaintiffs. Where a choice of inferences is possible from summary judgment materials, the court must draw the inference

that favors the party resisting summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

Further development of the record may well disclose a lack of merit in plaintiffs' claims against the defendant, either on the grounds raised here or on other grounds. In particular, plaintiffs' only possible substantive claim under § 301 is extremely limited, resting almost entirely on the character of the parties' impasse in failing to reach a new contract. Defendants may be entitled to summary judgment on the merits of that claim, or plaintiffs may not be able to advance it and still comply with Rule 11, but neither side has discussed the issue, nor has discovery apparently been devoted to it. Under the circumstances, granting summary judgment on that basis now would be inappropriate, but nothing in this opinion precludes the argument from being raised in a new summary judgment motion.

## CONCLUSION

Defendant's motion for summary judgment is denied.