**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, LOCAL UNION 1199, Plaintiff–Appellant,**

v.

**PEPSI–COLA GENERAL BOTTLERS, INC., Defendant–Appellee.**

No. 91–3659.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 31, 1992.

Decided March 16, 1992.

Kenneth J. Koenig (argued and briefed), Cincinnati, Ohio, for plaintiff-appellant.

William R. Sullivan, Jr. (argued and briefed), Jill A. Goldy, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Kenneth Richard Faller, Beckman, Weil, Shepardson & Faller, Cincinnati, Ohio, for defendant-appellee.

Before BOGGS and NORRIS, Circuit Judges, and ENGEL, Senior Circuit Judge.

ALAN E. NORRIS, Circuit Judge.

The International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local 1199 appeals the district court's decision to grant summary judgment to defendant, Pepsi–Cola General Bottlers, Inc. The union sued Pepsi when it refused to submit to binding arbitration the grievance of union member Gary Gardner which resulted from his termination. At the time the events giving rise to the grievance occurred, the collective bargain-

ing agreement, which provided for arbitration when a member was terminated for cause, had expired. A new collective bargaining agreement, which contained an identical arbitration provision, was implemented shortly after Gardner's termination. The district court concluded that, since any right to binding arbitration is contractually based, and there was no enforceable collective bargaining agreement at the time of Gardner's dismissal, Pepsi was justified in refusing to submit his grievance to arbitration.

Because the reasons why defendant was entitled to summary judgment have been articulated in an opinion written on June 21, 1991 by District Judge S. Arthur Spiegel, the drafting of a full written opinion by this court would amount to needless duplication. In view of the thoroughness of Judge Spiegel's unpublished opinion and of its value to the bench and bar, we adopt the portions set out below as the opinion of this court.

■■■ "Arbitration is a matter of contract, and a party cannot be required to submit a dispute to arbitration unless it has agreed to do so." *A T & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). Unless the parties have clearly and unmistakably provided otherwise, the question of whether the parties have agreed to submit a dispute to arbitration is a question for the Court, not the arbitrator. *Id.* at 649, 106 S.Ct. at 1418. In determining whether the parties have agreed to submit a dispute to arbitration, the Court may not consider the potential merits of the underlying claims even if the claims appear to the Court to be frivolous. *Id.* at 649–50, 106 S.Ct. at 1418–19. Where the contract between the parties contains an arbitration clause, the Court should order arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Id.* at 650, 106 S.Ct. at 1419. In the context of an expired collective bargaining agreement, however, the Court must determine whether the parties intended to arbi-

trate the dispute, even if it requires the Court to interpret a provision of the expired agreement. *Litton Financial Printing Division v. National Labor Relations Board,* 501 U.S. ——, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991).

"Local 1199 advances a number of theories to support its argument that Pepsi had a contractual duty to submit Gardner's grievance to arbitration. First, Local 1199 argues that Pepsi's agreement to arbitrate grievances under the old collective bargaining agreement survived the expiration of that agreement. Second, Local 1199 argues that Pepsi and Local 1199 entered into an implied agreement to arbitrate grievances during the period between the effective dates of the old and the new collective bargaining agreements. Finally, Local 1199 argues that Gardner's grievance is arbitrable under the new collective bargaining agreement.

■■ "Local 1199 contends that Pepsi had a contractual duty under the old collective bargaining agreement to submit Gardner's grievance to arbitration even after that agreement expired because the dispute between Gardner and Pepsi arose out of the old collective bargaining agreement. In *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL–CIO,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), the United States Supreme Court held as follows:

[T]he parties' failure to exclude from arbitrability contract disputes arising after the termination [of the collective bargaining agreement], ... affords a basis for concluding that they intended to arbitrate all grievances *arising out of* the contractual relationship. In short, where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication.

*Id.* at 255, 97 S.Ct. at 1074 (emphasis added). Therefore, we must presume that Pepsi had an obligation to arbitrate Gardner's grievance under the old collective bargaining agreement if the grievance 'arose out of' that agreement, unless the pre-

sumption favoring arbitrability was negated expressly or by clear implication.

"In *Nolde,* the union members were terminated following the cancellation of their collective bargaining agreement. The employer refused to submit the employees' claims for severance pay to arbitration. The employees obtained a vested right to severance pay during the term of the agreement, however, realization of this vested right did not occur until the employees were terminated after the expiration of the agreement. The Supreme Court held that the parties' dispute arose out of the terms of the expired agreement because the employees' entitlement to severance pay required an interpretation of the provisions of the expired agreement. Therefore, the Court held that the dispute was arbitrable under the expired agreement because the dispute required an interpretation of the terms of the agreement and the agreement did not expressly terminate the obligation to arbitrate disputes arising under the terms of the agreement upon the expiration of that agreement.

"In *Litton Financial Printing Division v. National Labor Relations Board, supra,* the United States Supreme Court further defined under what circumstances a dispute 'arises out of' an expired agreement. The Supreme Court held that a dispute 'arises out of' an expired agreement 'only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.' *Litton,* 501 U.S. at ——, 111 S.Ct. at 2225, 115 L.Ed.2d at 196. Generally, an employer's contractual obligations under a collective bargaining agreement cease upon termination of the agreement. Exceptions to this general rule are determined by rules of contract interpretation. *Id.* 501 U.S. at ——, 111 S.Ct. at 2226, 115 L.Ed.2d at 198. 'Rights which accrued or vested under the [expired] agreement will, as a general rule, survive termination of the agreement.' *Id.* Furthermore, rights may survive the expi-

ration of the collective bargaining agreement if the agreement provides in explicit terms that certain benefits continue after the agreement's expiration. *Id.*

"In the present case, Article XVIII, § 1, of the expired collective bargaining agreement defined a 'grievance' as 'a dispute or difference of opinion between an employee or a group of employees and the Employer as to the interpretation, application or violation of any of the terms or provisions of this Agreement.' Gardner's grievance stated that he was terminated without just cause.... Gardner's discharge and the events leading to his discharge occurred after the expiration of the old collective bargaining agreement. Generally, the right to be discharged only for just cause 'is strictly a creature of the collective bargaining agreement and its life as a matter of contract does not extend beyond contract expiration.' *Chauffeurs, Teamsters & Helpers, Local Union 238 v. C.R.S.T., Inc.,* 795 F.2d 1400, 1404 (8th Cir.) (en banc), *cert. denied,* 479 U.S. 1007, 107 S.Ct. 647, 93 L.Ed.2d 702 (1986). Article VI of the collective bargaining agreement does not explicitly provide that the right to be discharged only for just cause survives termination of the agreement. Therefore, we find that Gardner's grievance does not 'arise out of' the old collective bargaining agreement. Because we find that Gardner's grievance does not 'arise out of' the old collective bargaining agreement, we find that Pepsi had no obligation to submit Gardner's grievance to arbitration under that agreement.

■ "Local 1199 also argues that Pepsi had an obligation to arbitrate Gardner's grievance under an implied agreement between Pepsi and Local 1199 to arbitrate grievances during the period between the effective dates of the old and the new collective bargaining agreements. Local 1199 asserts that the parties agreed during their negotiations for a new collective bargaining agreement that the grievance arbitration provisions would appear in the new collective bargaining agreement exactly as they had appeared in the old one. Therefore, Local 1199 argues that Pepsi's final

pre-impasse proposals must have contained the grievance arbitration provision, and that Pepsi's unilateral implementation of its final proposals following the alleged impasse constituted an implied agreement to arbitrate grievances during the hiatus period.

"Pepsi argues that its actions clearly demonstrate that it did not intend to enter into an implied agreement to arbitrate grievances during the period between the two collective bargaining agreements, and that Local 1199 understood that Pepsi had no such intention. Pepsi points out that it never expressly mentioned the grievance arbitration procedures when it implemented its pre-impasse proposals. Pepsi also asserts that it only implemented select provisions encompassed by its pre-impasse proposals, and therefore, Local 1199 must have understood that Pepsi did not impliedly agree to implement all of the undisputed terms of the old collective bargaining agreement by implementing its pre-impasse proposals. Furthermore, Pepsi argues that the fact that Local 1199 called a strike demonstrates that Local 1199 understood that no agreement to implement all of the undisputed terms of the old collective bargaining agreement during the hiatus period existed.

"In order to determine whether an implied agreement to arbitrate grievances during the hiatus period existed, we must apply the following principles. Because federal labor law has emphasized the importance of maintaining industrial peace, the Court need not strictly apply technical rules of contract law to labor contracts. However, a 'meeting of the minds' between the parties must still occur before a labor contract is created. The existence of a labor contract may be shown by conduct manifesting an intention to abide by agreed-upon terms. *See Bobbie Brooks, Inc. v. International Ladies' Garment Workers Union*, 835 F.2d 1164, 1168 (6th Cir.1987); *International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, Local 1603 v. Transue & Williams Corp.*, 879 F.2d 1388, 1392 (6th Cir.1989).

"After the old collective bargaining agreement expired, Pepsi terminated dues deductions even though dues deductions were not a disputed provision of the old agreement. Furthermore, Local 1199 called a strike during the hiatus period which would have violated the no-strike clause of the old collective bargaining agreement. Generally, an express or implied no-strike clause is the *quid pro quo* for the employer's agreement to arbitrate grievances. *See Gateway Coal Company v. United Mine Workers of America*, 414 U.S. 368, 382, 94 S.Ct. 629, 639, 38 L.Ed.2d 583 (1974); *Boys Markets, Inc. v. Retail Clerks, Local 770*, 398 U.S. 235, 248, 90 S.Ct. 1583, 1591, 26 L.Ed.2d 199 (1970); *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957). The no-strike clause was not a disputed term during the negotiations. The fact that Local 1199 called a strike demonstrates that Local 1199 did not believe that an implied agreement incorporating all of the undisputed terms of the old collective bargaining agreement existed. Therefore, we find that Local 1199 could not have reasonably believed that Pepsi agreed to implement all of the undisputed terms of the old collective bargaining agreement when Pepsi implemented its pre-impasse proposals.

"Absent an express indication that Pepsi agreed to implement the grievance arbitration provisions of the old agreement, Local 1199 could not have reasonably believed that Pepsi agreed to implement the grievance arbitration provisions but not other undisputed provisions of the old agreement. It is undisputed that Pepsi never expressly indicated that it agreed to implement the grievance arbitration provisions of the old agreement during the hiatus period. Therefore, we find that Local 1199 could not have reasonably believed that Pepsi agreed to implement the grievance arbitration provisions of the old collective bargaining agreement when Pepsi implemented its pre-impasse proposals.

"Local 1199 argues that the fact that Pepsi processed Gardner's grievance up to the arbitration step of the grievance

procedure suggests that Pepsi entered an implied agreement to arbitrate grievances during the hiatus period. However, we find that the fact that Pepsi continued to process grievances as provided by the terms of the expired collective bargaining agreement does not support the inference that Pepsi agreed to arbitrate those grievances. Although we have found that Pepsi's contractual obligation to process grievances ended with the expiration of the old collective bargaining agreement, Pepsi may have had a statutory obligation to continue processing those grievances. If Pepsi had unilaterally abandoned the grievance procedures of the expired agreement, then Pepsi may have been guilty of violating § 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5). *See Indiana & Michigan Electric Company*, 284 N.L.R.B. 53, 54–55 (1987) (citing *Bethlehem Steel Company, 136 N.L.R.B. 1500 (1962), enforced in pertinent part*, 320 F.2d 615 (3rd Cir. 1963), *cert. denied*, 375 U.S. 984, 84 S.Ct. 516, 11 L.Ed.2d 472 (1964)). However, an employer does not violate § 8(a)(5) by unilaterally abandoning a grievance arbitration procedure after its contractual duty to arbitrate grievances has expired. *Id.* at 57–58 (citing *Hilton–Davis Chemical Company*, 185 N.L.R.B. 241 (1970)). *See also Litton*, 501 U.S. at ——, 111 S.Ct. at 2222, 115 L.Ed.2d at 193. Similarly, an employer does not violate § 8(a)(5) by unilaterally abandoning dues collection after the termination of a collective bargaining agreement. *See Bethlehem Steel Company*, 136 N.L.R.B. 1500, 1502 (1962), *enforced in pertinent part*, 320 F.2d 615, 620 (3rd Cir. 1963), *cert. denied*, 375 U.S. 984, 84 S.Ct. 516, 11 L.Ed.2d 472 (1964). Therefore, the fact that Pepsi continued to process Gardner's grievance but refused to arbitrate that grievance does not indicate that Pepsi had an implied contractual obligation to arbitrate Gardner's grievance which it breached. Instead, it supports the inference that Pepsi wished to avoid violating § 8(a)(5) of the National Labor Relations Act.

"Accordingly, we find that the parties did not enter into an implied agreement to arbitrate grievances during the period between the effective dates of the old and the new collective bargaining agreements.

■ "Local 1199 also argues that Pepsi had an obligation to arbitrate Gardner's grievance because elimination of the arbitration provision was not encompassed by Pepsi's pre-impasse proposals. Therefore, Local 1199 asserts that Pepsi could not unilaterally abandon the arbitration provision contained in the expired collective bargaining agreement. Although employers are statutorily prohibited from unilaterally changing most terms and conditions of employment following the expiration of a collective bargaining agreement, in order to safeguard the duty to bargain good faith, those terms and conditions no longer have force by virtue of the expired contract. *Litton*, 501 U.S. at ——, 111 S.Ct. 2225–26, at 115 L.Ed.2d at 197. Therefore, although Local 1199's argument may state a claim for an unfair labor practice in violation of § 8(a)(5) of the National Labor Relations Act, which is within the exclusive jurisdiction of the National Labor Relations Board, Local 1199's argument does not support its claim in Count I of the complaint for breach of a contractual obligation under § 301. *See San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959)); *Kingsport Publishing Corp. v. National Labor Relations Board*, 399 F.2d 660, 661–62 (6th Cir.1968).

■ "Furthermore, we believe that the National Labor Relations Board would reject Local 1199's claim that Pepsi violated § 8(a)(5) by unilaterally abandoning the grievance arbitration procedure. Generally, an employer may not unilaterally alter terms and conditions of employment without first reaching an impasse in negotiations with the union. Otherwise, the employer is guilty of bargaining in bad faith in violation of § 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5). *See National Labor Relations Board v. Katz*, 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962). However, 'after an impasse has been reached on one or more subjects of bargaining, an employer may implement any of its pre-impasse proposals, even if no impasse has occurred as to those

particular proposals which are put into effect.' *Western Newspaper Publishing, Inc.,* 269 N.L.R.B. 355, 355 (1984). Local 1199 argues that elimination of the grievance arbitration procedure was not reasonably encompassed by Pepsi's final pre-impasse proposals, and therefore, Pepsi could not alter the grievance arbitration procedure without violating its duty to bargain in good faith. However, as we have already noted, the general rule prohibiting unilateral changes in terms and conditions of employment does not prohibit an employer from unilaterally abandoning a grievance arbitration procedure contained in an expired collective bargaining agreement before reaching an impasse. *See Indiana & Michigan Electric Company,* 284 N.L.R.B. 53, 56–58 (1987) (citing *Hilton–Davis Chemical Company,* 185 N.L.R.B. 241 (1970)); *see also Litton,* 501 U.S. ——, 111 S.Ct. at 2222, 115 L.Ed.2d at 193. Accordingly, we believe that Local 1199's argument would be rejected by the National Labor Relations Board.

 "Finally, Local 1199 contends that Pepsi had a contractual duty under the new collective bargaining agreement to submit Gardner's grievance to arbitration. The strongest support for Local 1199's argument that Pepsi had a contractual obligation to submit Gardner's grievance to arbitration under the new agreement is found in *Mail–Well Envelope v. International Association of Machinists and Aerospace Workers, District 54,* 916 F.2d 344 (6th Cir.1990). In *Mail–Well,* the employer discharged three employees one day before the effective date of a new collective bargaining agreement. The employees were discharged for alleged illegal misconduct during a strike which followed the expiration of the old collective bargaining agreement. After the new collective bargaining agreement became effective, the union filed a grievance on behalf of the discharged employees under the new agreement. The union's grievance asserted that the employer had violated the new collective bargaining agreement by failing to recall the 'laid-off' employees in the order of their seniority. The employer refused to submit the grievance to arbitration. The employer argued that the provisions of the new collective bargaining agreement which formed the basis of the union's grievance did not apply to the three employees because they were discharged for cause rather than laid-off. Therefore, the employer asserted that the arbitration clause contained in the new agreement did not require the employer to submit the union's grievance to arbitration.

"The Sixth Circuit Court of Appeals affirmed the district court's judgment requiring the employer to submit the grievance to arbitration. The Sixth Circuit found that the employer's arguments attacked the merits of the union's grievance rather than addressing the duty to arbitrate that grievance. *Id.* at 347. The court held that the questions of whether the employees would be entitled to relief if they were not discharged for cause, and if so, whether they were discharged for cause were questions for the arbitrator. *Id.* Applying the Supreme Court's holding in *A T & T Technologies, supra,* the Sixth Circuit found that the dispute must be submitted to arbitration because the court could not determine with positive assurance that the arbitration clause was not susceptible of an interpretation that covered the asserted dispute. *Mail–Well,* 916 F.2d at 348.

" . . . .

"Although the arbitration clause at issue in the present case is virtually identical to the arbitration clause that was at issue in *Mail–Well,* we find that the *Mail–Well* decision is not dispositive of the present case . . . [since] . . . the grievance at issue in the present case is substantially different from the grievance that was at issue in *Mail–Well. . . .*

"In the present case, the union's grievance states that Gardner was discharged without just cause in violation of Article VI of the collective bargaining agreement. It is undisputed that Gardner's discharge and the events leading to his discharge occurred prior to the effective date of the new collective bargaining agreement. In *Mail–Well,* the union's grievance stated that the employer had failed to recall 'laid-

off' employees in the order of their seniority. The union's failure to recall these employees occurred after the effective date of the new collective bargaining agreement. Therefore, because the employer's disputed conduct occurred after the effective date of the new collective bargaining agreement, the union's grievance in *Mail–Well* at least arguably required the arbitrator to interpret the terms of the new agreement. However, in the present case, the employer's disputed conduct, the discharge of Gardner, occurred prior to the effective date of the new collective bargaining agreement. Therefore, the union's grievance does not even arguably require the arbitrator to interpret the terms of the new collective bargaining agreement in the present case. Accordingly, we find that the arbitration clause contained in the new collective bargaining agreement does not require Pepsi to submit Gardner's grievance to arbitration under the rationale of the Sixth Circuit's decision in *Mail–Well.*

" . . . .

"In *Mail–Well*, the Sixth Circuit also found that it could have reached the same result by following the decision of the Fifth Circuit Court of Appeals in *Oil, Chemical & Atomic Workers International Union, Local No. 4–23 v. American Petrofina Company of Texas*, 820 F.2d 747 (5th Cir. 1987). In *American Petrofina*, a union member was discharged for strike misconduct which occurred during an economic strike following the expiration of the parties' collective bargaining agreement. The parties entered into a new collective bargaining agreement approximately nine months after the union member was discharged. The union filed a grievance on behalf of the union member under the new agreement seeking reinstatement.

"The Fifth Circuit held that the discharge of the union member may have violated the National Labor Relations Act, and therefore, the union member was arguably still an 'employee' under the terms of the new agreement. The Fifth Circuit held that the employer's refusal to reinstate the 'employee' may have constituted a discharge without just cause under the new

agreement. *Id.* at 750–52. The employer argued that any statutory right the discharged union member may have had to reinstatement under the National Labor Relations Act was wholly independent from the union member's contractual rights as an 'employee' under the new agreement. The Fifth Circuit rejected the employer's argument because the new collective bargaining agreement expressly made all rights under the agreement subject to rights established by the National Labor Relations Act. *Id.* at 752. Therefore, the Fifth Circuit concluded that the issue of whether the employer had failed to reinstate the 'employee' without just cause was arbitrable under the terms of the new agreement.

"In the present case, although Pepsi discharged Gardner for conduct that occurred before the strike began, Local 1199 argues that Gardner's discharge was strike-related and may have violated the National Labor Relations Act. Therefore, Local 1199 argues that, under the rationale of the Fifth Circuit's decision in *American Petrofina*, Pepsi's failure to reinstate Gardner after he filed his grievance may constitute a discharge without just cause under the new collective bargaining agreement which is arbitrable under that agreement.

■ "We find that Gardner's grievance is not subject to arbitration under the new collective bargaining agreement under the rationale of *American Petrofina*. In the present case, the new collective bargaining agreement did not contain an express provision making the parties' rights under the contract subject to rights established by the National Labor Relations Act. Absent a contractual provision such as the one in *American Petrofina*, an employer's statutory duty to reinstate an employee under the National Labor Relations Act does not create a contractual duty to reinstate the employee under the new collective bargaining agreement. Therefore, Gardner's right to reinstatement under the Act is wholly independent of his claim that he is entitled to reinstatement under the new agreement. Absent a contractual right to reinstatement, Gardner cannot assert that Pepsi's

failure to reinstate him constituted a second discharge without just cause under the new agreement. Because Gardner's discharge and the events leading to his discharge occurred before the effective date of the new agreement, we find that Gardner can assert no contractual right to be discharged only for just cause under the new agreement. Accordingly, we find that Pepsi had no contractual obligation to submit Gardner's grievance to arbitration under the collective bargaining agreement.

"Having found that Pepsi had no contractual duty to submit Gardner's grievance to arbitration, we hereby grant Pepsi's motion for summary judgment...."

For the reasons stated above, the judgment of the district court is affirmed.