**SOUTH CENTRAL POWER COMPANY, Plaintiff–Appellant,**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION 2359, Defendant–Appellee.**

No. 98–3817.

United States Court of Appeals, Sixth Circuit.

Argued June 9, 1999.

Decided July 29, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 7, 1999.

William C. Moul (argued and briefed), Bonnie I. O'Neil (briefed), Thompson, Hine & Flory, Columbus, Ohio, for Plaintiff–Appellant.

Gary A. Snyder (argued and briefed), Michael A. Ledbetter (briefed), Snyder, Rakay & Spicer, Dayton, Ohio, for Defendant–Appellee.

Before: KEITH, KENNEDY, and GILMAN, Circuit Judges.

GILMAN, J., delivered the opinion of the court, in which KEITH, J., joined. KENNEDY, J. (pp. 742–43), delivered a separate dissenting opinion.

GILMAN, Circuit Judge.

South Central Power Company ("South Central") and the International Brotherhood of Electrical Workers, Local 2359 ("the Union") were parties to a collective bargaining agreement between September 1, 1992 and August 31, 1997. A subsequent agreement between the parties did not become effective until November 23, 1997. Michael J. Skinner, an employee of South Central, was discharged during the gap between the two agreements. The Union demanded arbitration of the disputed termination. In response, South Central filed suit to enjoin the arbitration proceedings, claiming that it was not contractually obligated to arbitrate. The district court denied South Central's motion for injunctive relief, holding that South Central had an implied duty to submit the dispute to arbitration because the facts and occurrences that led to Skinner's termination arose before the expiration of the first agreement. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

South Central is a rural electric distribution cooperative. The Union is the exclusive bargaining representative for most of South Central's production and maintenance employees. On September 1, 1992, South Central and the Union entered into a collective bargaining agreement that was effective from that date until August 31, 1997 (the "Old Agreement"). Article VII of the Old Agreement provided, in pertinent part, as follows:

> Section 1. If a difference arises between [the Union] and [South Central] which the parties hereto have not resolved through the grievance procedure, such difference may, at the request of either party, be submitted to arbitration.

> .   .   .   .   .

> Section 3. The decision of the arbitrator shall be final and binding upon the parties.

Article IX of the Old Agreement further provided that the discharge or suspension of any employee would only be for just cause.

The Old Agreement expired pursuant to its terms on August 31, 1997. South Central and the Union did not enter into a new agreement until November 23, 1997 (the "New Agreement"). The New Agreement contained the same arbitration and just-cause provisions as set forth in the Old Agreement. But between September 1, 1997 and November 23, 1997, no collective bargaining agreement was in effect between the parties. The Union in fact explicitly declined to extend the terms of the Old Agreement after its expiration, rejecting an Extension Agreement proposed by South Central on August 28, 1997 that would have indefinitely extended the terms of the Old Agreement. Furthermore, on September 17, 1997, a representative of South Central wrote the president of the Union, stating that because the Old Agreement had expired on August 31, 1997, South Central was not contractually obligated to arbitrate any grievance that arose thereafter and would not do so.

This case arises from South Central's termination of an employee during the hiatus between the effective dates of the two collective bargaining agreements. Former South Central employee Michael J. Skinner was a member of the bargaining unit of South Central employees represented by the Union. On June 24, 1997, during the term of the Old Agreement, South Central discovered that Skinner did not live within 20 driving miles of his reporting location as required by said Agreement. The company promptly notified Skinner that he had to relocate within the 20–mile zone.

On June 26, 1997, the Union filed a grievance on Skinner's behalf, essentially arguing that South Central was estopped from taking any disciplinary action against Skinner on this basis due to its prior approval of Skinner's place of residency approximately three miles beyond the zone. South Central denied the grievance on June 30, 1997. It further notified Skinner that if he did not relocate within 90 days of June 24, 1997, his employment would be terminated. The record fails to reflect what action, if any, the Union took with regard to this denial.

On September 15, 1997, 15 days after the expiration of the Old Agreement, Skinner received a letter from South Central again stating that he would be terminated if he did not relocate by September 24, 1997. Skinner did not relocate, and was subsequently terminated on October 7, 1997. On October 15, 1997, the Union presented a grievance to South Central with regard to Skinner's termination, claiming that he was not terminated for just cause. South Central denied the grievance, asserting that the dispute was not arbitrable in the absence of a contractual relationship between the parties.

The Union then filed a demand for arbitration of the grievance with the American Arbitration Association ("AAA") on March 20, 1998. Arbitration proceedings have moved forward, despite the demand by South Central that the matter be dismissed. Under AAA rules, the Union can proceed to arbitrate a grievance on an *ex parte* basis if South Central refuses to participate, absent a court order to the contrary.

In order to restrain the Union from pursuing the arbitration of this grievance, South Central filed suit against the Union in the United States District Court for the Southern District of Ohio, seeking declaratory and injunctive relief. South Central further requested that the district court order the Union to immediately dismiss the arbitration proceeding pending before the AAA. A temporary restraining order

against the Union was granted until May 29, 1998. The parties then agreed that the district court's ruling on the permanent injunction would be a final and appealable order. On June 2, 1998, the district court denied South Central's motion for injunctive relief as to the Skinner grievance, holding that South Central had an implied duty to submit the dispute to arbitration because the facts and occurrences that led to Skinner's termination arose before the expiration of the Old Agreement.

Along with its demand for arbitration of the Skinner grievance, the Union also filed a demand for arbitration with the AAA regarding the termination of another South Central employee, Richard Hogle. In its request for injunctive relief, South Central also sought the dismissal of Hogle's arbitration proceeding, claiming that his termination occurred between the effective dates of the two agreements and that the company was therefore not contractually bound to arbitrate this grievance. The district court held in favor of South Central with regard to Hogle's claim, finding that "all of the events relevant to the Hogle suspension occurred post-expiration." A permanent injunction was granted prohibiting the Union from taking action in Hogle's arbitration and terminating the proceeding as to him. This ruling has not been appealed by the Union.

## II. ANALYSIS

### A. Standard of review

■ A district court's decision to grant or deny a permanent injunction is reviewed under several distinct standards. Factual findings are reviewed under the clearly erroneous standard, legal conclusions are reviewed *de novo*, and the scope of injunctive relief is reviewed for an abuse of discretion. *See Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999).

## B. Supreme Court precedent—Nolde Brothers and Litton

█ Whether South Central is bound to arbitrate the Skinner grievance involves a question of contract interpretation. The United States Supreme Court has stated that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (internal quotation marks and citation omitted). Such issues of interpretation are properly decided by the courts. *See id.* at 649, 106 S.Ct. 1415.

In 1970, the National Labor Relations Board held that an arbitration clause generally does not continue in effect after the expiration of a collective bargaining agreement. *See Hilton–Davis Chem. Co.*, 185 NLRB 241, 242, 1970 WL 25333 (1970). The NLRB's holding was subsequently adopted by the Supreme Court. *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 200, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991).

The Supreme Court, however, has created an exception to this general rule. In *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), the parties' collective bargaining agreement, which contained a binding arbitration clause, "was to remain in effect until July 21, 1973, and thereafter, until such time as either a new agreement was executed between the parties, or the existing agreement was terminated ... by either party." *Id.* at 246, 97 S.Ct. 1067. The union in fact took the appropriate steps to terminate the agreement as of August 27, 1973. Four days after the agreement's termination, the company closed the plant due to the union's threat to strike. The company then failed to pay the employees any severance pay and declined to arbitrate the matter on the ground that its obligation to arbitrate terminated along with the collective bargaining agreement.

Contrary to the Nolde Brothers' position, the Court held that the termination of a collective bargaining agreement does not automatically extinguish a party's duty to arbitrate a grievance that "arises under the contract." *See id.* at 251, 97 S.Ct. 1067. Rather, it held that there was a strong presumption in favor of arbitrability when the grievance arises under the contract, and that "the presumptions favoring arbitrability [in such cases] must be negated expressly or by clear implication." *Id.* at 255, 97 S.Ct. 1067. Because the dispute arose under the contract—it directly involved the severance pay provision of the expired agreement—the Court held that the presumption favoring arbitration applied and that the dispute was therefore subject to resolution under the agreement's arbitration terms.

█ A similar issue was presented in *Litton Financial Printing Division v. NLRB*, 501 U.S. 190, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991). In that case, the company laid off 10 workers almost one year after the expiration of the parties' collective bargaining agreement. The union sought to arbitrate its grievance of these terminations on the basis of the arbitration clause contained within the expired agreement. In rejecting the union's position, the Court explained that the presumption in favor of arbitration as set forth in *Nolde Brothers* only applies when the dispute has its "real source in the contract." *Litton*, 501 U.S. at 205, 111 S.Ct. 2215. It then set forth the following three situations when a dispute would be deemed to arise under a contract:

> A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed

contractual right survives expiration of the remainder of the agreement.

*Id.* at 205–06, 111 S.Ct. 2215. The Court then held that the company was not obligated to arbitrate the layoff grievance in question because, unlike the dispute in *Nolde Brothers*, it did not fit within any of the three categories that would cause it to "arise under the contract."

■ In light of these two cases, we can draw the following conclusions: (1) If all of the facts and occurrences relating to Skinner's termination had arisen prior to the expiration of the Old Agreement, then the parties would be bound to arbitrate, and (2) if none of the facts and occurrences had arisen prior to the expiration of the Old Agreement (as was the case with Skinner's fellow employee Hogle), then arbitration would clearly not be required. Neither decision, however, answers the question of whether arbitration is required in a situation such as that presented in the instant case in which some, but not all, of the facts and occurrences arose prior to the expiration of the Old Agreement.

## C. Whether the Skinner grievance "arose under the contract"

In the present case, the district court held that South Central was bound to arbitrate the Skinner grievance because it involved facts and occurrences that arose before the expiration of the Old Agreement. Specifically, the district court pointed out that (1) the rule that Skinner violated (the requirement that employees live within 20 miles of the facility) was contained within the terms of the Old Agreement, (2) South Central learned of Skinner's violation and warned him that he would be terminated for this violation during the term of the Old Agreement, and (3) a letter from South Central's manager dated September 15, 1997 stated that one ground for Skinner's termination was an alleged misrepresentation regarding his residency made during his initial interview in 1995. Although Skinner was terminated during the gap between the two agree-

ments, the district court held that the facts and occurrences that led to his termination occurred during the term of the Old Agreement and that the parties were therefore bound to arbitrate the grievance.

■ South Central, however, argues that the only material fact or occurrence to be considered when applying the *Litton* test is the employee's discharge itself, not the events leading up to the discharge. It therefore contends that because Skinner's discharge occurred after the expiration of the Old Agreement and before the beginning of the New Agreement, his discharge is not arbitrable. Although the precise reach of the *Litton* test is uncertain, it is clear that South Central's proposed rule is inconsistent with the Supreme Court's reasoning. *Litton* held that "a postexpiration grievance can be said to arise under the contract ... where it involves facts and occurrences that arose before expiration." 501 U.S. at 206, 111 S.Ct. 2215. If the Court had felt that the only relevant consideration is whether an employee's discharge occurs before expiration of the agreement, it could have easily created such a rule. By not doing so, it seems evident to us that *Litton* requires a consideration of "facts and occurrences" beyond the ultimate fact of discharge.

■ We similarly reject the Union's contention that arbitration is required as long as *any* fact or occurrence arose prior to the expiration of the Old Agreement. In support of this argument, the Union cites *Trinidad Corp. v. National Maritime Union of America*, 81 F.3d 769 (8th Cir. 1996). In *Trinidad*, the employer refused to participate in the arbitration of four grievances that were filed by the union after the expiration of the parties' collective bargaining agreement. Because the parties agreed that all of the facts and occurrences leading to two of the grievances (namely, the employer's failure to raise wages and the payment of an unauthorized bonus) occurred after the agreement's date of expiration, the court held

that the employer was not obligated to submit these claims to arbitration. *See id.* at 773. On the other hand, the parties disputed whether the facts and occurrences leading to the two remaining grievances (namely, the employer's allowing non-union personnel to perform union work and the number of the employer's ships in operation in comparison with another related company) occurred before or after the agreement's expiration. The Eighth Circuit stated that "our inquiry is limited to determining whether any of the facts and circumstances leading to the relevant grievances arose before termination." *Id.* It therefore remanded the case to the district court with instructions for it to resolve this dispute and stated that "[i]f the relevant events occurred before expiration, then the grievances arose under the agreement and are subject to arbitration." *Id.*

■ To the extent that the Eighth Circuit meant for the term "any" to reflect the controlling legal standard, we decline to adopt the analysis as set forth in *Trinidad.* Although the parties are bound to arbitrate when a post-expiration dispute arises out of a collective bargaining agreement, this rule constitutes an exception to the general principle that the obligation to arbitrate grievances does not continue in effect after the agreement expires. Courts should therefore be wary of stretching the applicability of the exception. *Trinidad's* inclusion of the term "any" stretches the exception beyond that which we believe was intended by the Supreme Court. For instance, if one assumes a case where only one relatively minor fact occurs prior to the expiration of a collective bargaining agreement, with all of the more material facts occurring after this date, a court applying the holding in *Trinidad* would require the parties to arbitrate the dispute. Because we believe that such an interpretation creates the risk of the exception swallowing the rule, we find that this is an undesirable extension of *Nolde Brothers* and *Litton.*

■ Instead, we believe that a dispute "arises under the contract" when a *majority* of the *material* facts and occurrences arose before the expiration of the collective bargaining agreement. Such a rule seems to us much more in line with the Supreme Court's analysis as set forth *Nolde Brothers* and *Litton.* The material facts and occurrences that may be considered in making this determination include, but are not limited to, the factual predicate underlying the grievance, whether any grievance was filed or pursued, and the timing of discipline or discharge of the employee. Because these cases are predominately factual in nature, this will necessarily be a case-by-case determination. If a majority of the material facts or occurrences are found to arise prior to the agreement's expiration, then the presumption in favor of arbitration will apply and the parties will be bound by the agreement's arbitration clause.

■ In the instant case, the following material facts and occurrences arose prior to the expiration of the Old Agreement: (1) the rule that Skinner violated was contained within the terms of the Old Agreement, (2) South Central learned of Skinner's violation and warned him that he would be terminated for this violation, (3) a letter from South Central's manager dated September 15, 1997 stated that one ground for Skinner's termination was an alleged misrepresentation regarding his residency made during his initial interview in 1995, (4) the Union filed a grievance on Skinner's behalf, and (5) Skinner's "estoppel" defense is based on representations allegedly made by one or more agents of South Central during the term of the Old Agreement. On the other hand, the only material facts that arose after the Agreement's expiration were Skinner's actual termination and the lapse of his 90–day grace period in which to relocate. We therefore conclude that a majority of the material facts and occurrences arose under Old Agreement, thus requiring arbitration of the dispute.

■■■ South Central, however, argues that Skinner's grievance cannot "arise out of the contract" because the just-cause provision of the Old Agreement was no longer in effect at the time of his discharge. *See International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Pepsi–Cola General Bottlers, Inc.*, 958 F.2d 1331, 1334 (6th Cir. 1992) (holding that the right to be discharged only for just cause generally does not survive the expiration of the collective bargaining agreement). According to the company, Skinner was an at-will employee at the time of his discharge, thus relieving South Central of any obligation to arbitrate the grievance.

■■■ Contrary to South Central's argument, we believe that if a dispute has its "real source in the contract" and an employee thus reaps the benefit of the collective bargaining agreement with regard to its arbitration clause, the employee must also be covered by the agreement's just-cause provision with respect to his or her grievance. To hold otherwise would essentially render meaningless the right to arbitrate that was preserved in *Nolde Brothers* and *Litton*. At-will status under these circumstances would cause the cards to always be stacked against the employee. The better approach is to determine whether a majority of the material facts and circumstances leading up to the termination occurred prior to the expiration of the relevant bargaining agreement. When such proves to be the case, we conclude that both the arbitration clause and the just-cause provision apply to the dispute in question.

Finally, we note that the two cases primarily relied upon by South Central are both distinguishable from the present situation. The first of these cases, *Pepsi–Cola*, 958 F.2d at 1331, presented a much simpler set of circumstances. In that case, an employee was suspended and later discharged for alleged insubordination some three months after the expiration of the parties' collective bargaining agreement,

and prior to the effective date of a new agreement. This court concluded that the employee's "discharge and the events leading to his discharge occurred after the expiration of the old collective bargaining agreement." *Id.* at 1334. Because all of the facts and occurrences leading to the employee's discharge in *Pepsi–Cola* arose after the expiration of the old agreement, the court was clearly not faced with any of the *Litton* exceptions. In contrast, we conclude that a majority of the material facts and occurrences leading to Skinner's discharge occurred prior to the expiration of the Old Agreement, making *Pepsi–Cola* distinguishable.

The other case in question is *Cincinnati Typographical Union v. Gannett Satellite Information Network, Inc.*, 17 F.3d 906 (6th Cir.1994), in which this court held that the employer was not required to arbitrate the employees' grievance relating to their alleged rights not to be laid off. This court's decision was based on its conclusion that the employees' rights did not accrue or vest under the collective bargaining agreement. *See id.* at 910. In the present case, the Union does not rely on the "accrue or vest" exception created in *Litton*, but instead relies upon the separate *Litton* exception relating to the facts and occurrences that arose before the expiration of the collective bargaining agreement. The analysis of *Cincinnati Typographical* is thus not applicable to the present case.

**D. The effect of an agreement not to extend the terms of the collective bargaining agreement beyond its expiration date**

■■■ Having decided that Skinner's grievance "arose out of the contract," we must now determine if the parties negated, either expressly or by clear implication, the presumption that the arbitration clause of the collective bargaining agreement extends beyond the expiration of the Old Agreement. As stated by the Supreme Court in *Nolde Brothers*, "where the dispute is over a provision of the expired

agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication." *Nolde Brothers,* 430 U.S. at 255, 97 S.Ct. 1067.

In the present case, the Union explicitly rejected South Central's proposed Extension Agreement on August 28, 1997. The union in *Nolde Brothers* similarly terminated the parties' collective bargaining agreement that would otherwise have remained in effect until the execution of a new agreement. *See id.* at 246, 97 S.Ct. 1067. Because the Supreme Court in that case concluded that the parties were still obligated to arbitrate the dispute over severance pay despite the union's termination of the agreement, we hold that the Union's rejection of the Extension Agreement in the present case does not constitute an express or clearly implied rejection of the presumption in favor of arbitration.

## III. CONCLUSION

For all of the reasons set forth above, we AFFIRM the decision of the district court.

KENNEDY, Circuit Judge, dissenting.

This case seems to me indistinguishable from *Litton Fin. Printing Div. v. NLRB,* 501 U.S. 190, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991). There, the employees were laid off after the contract had expired. Here, Skinner was discharged after the contract had expired. The Court held that since the employees had *no vested or accrued rights* to be laid off by seniority, the company did not have to arbitrate. There too there were facts and circumstances that occurred before expiration of the contract, namely employment seniority. The Court stated,

[t]he layoffs took place almost one year after the Agreement had expired. It follows that the grievances are arbitrable only if they involve rights which accrued or vested under the Agreement, or rights which carried over after expiration of the Agreement, not as legally imposed terms and conditions of employ-

ment but as continuing obligations under the contract.

501 U.S. at 209, 111 S.Ct. 2215.

While the Court does say

[a] postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement,

*Id.* at 205–06, 111 S.Ct. 2215, the Majority treats the first clause as one of three independent requirements. I believe that instead it is a requirement of both of the following clauses. First, the facts and circumstances must arise before expiration. When they do, then if the right accrued or vested under the agreement or a disputed contractual right survives, the grievance arises under the contract. Under the Majority's interpretation the word "or" rather than the comma would have to be inserted after "expiration."

The next paragraph of the Court's opinion supports my reading.

Any other reading of Nolde Brothers seems to assume that postexpiration terms and conditions of employment which coincide with the contractual terms can be said to arise under an expired contract, merely because the contract would have applied to those matters had it not expired. But that interpretation fails to recognize that an expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied.

*Id.* at 206, 111 S.Ct. 2215.

In every case where "action taken after expiration infringes" an accrued or vested right or where a disputed contractual right survives expiration of the contract, there

will be facts and circumstances that arose before expiration. To treat the first clause as an independent ground makes the second and third clauses unnecessary.[1]

1. As the Court explained, employees were protected by postexpiration terms imposed by the NLRA. Terms and conditions of employment continue in effect by operation of the NLRA. The NLRA is enforced by the NLRB if unfair labor practices are found to exist. *See id.* at 198–99, 111 S.Ct. 2215.