GENERAL TRUCK DRIVERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS, LOCAL NO. 957, affiliated with the International Brotherhood of Teamsters, AFL–CIO, Plaintiff–Appellant,

v.

DAYTON NEWSPAPERS, INC., Defendant–Appellee.

No. 01–3114.

United States Court of Appeals, Sixth Circuit.

Dec. 4, 2003.

John R. Doll, Diana S. Brown, Logothetis, Pence & Doll, Dayton, OH, for Plaintiff–Appellant.

James M. Hill, McNamee & Hill, Beavercreek, OH, for Defendant–Appellee.

Before BOGGS, Chief Judge; KRUPANSKY and CLAY, Circuit Judges.

BOGGS, Chief Judge.

This case comes before our court for the second time. In an earlier decision, we held that an arbitrator's award reinstating union employee Rick Elliott, because his discharge was found to be without "just cause," should not have been overturned by the district court. *See General Truck Drivers v. Dayton Newspapers, Inc.*, 190 F.3d 434 (6th Cir.1999). Following the reinstatement that we ordered, Elliott was immediately terminated for the stated reason that the company's independent evaluation, subsequent to the arbitrator's decision and the expiration of the Collective Bargaining Agreement ("CBA"), found that Elliott could constitute a liability risk because of his past assaultive behavior. The company also refused to arbitrate the

union's grievance resulting from this second termination. The company contended that this termination was based on circumstances occurring after the expiration of the Collective Bargaining Agreement, and therefore was not subject to arbitration.

The district court ultimately agreed with the company, while the union now argues that, under applicable precedent, the arbitration clause remains in effect to govern situations where the majority of the facts and circumstances relied upon took place prior to the expiration of the Collective Bargaining Agreement. We agree with the appellant, reverse the judgement of the district court, and remand for the submission of the grievance to arbitration.

## I

The underlying events are set forth in detail in our previous decision. 190 F.3d at 435–37. In sum, on February 24, 1996, Elliott was involved in an altercation at work with a co-worker, not his wife, with whom he was having a "personal relationship." There were various witnesses to the scene, who gave somewhat differing accounts as to who instigated the altercation and how serious it was. Elliott was terminated a month later for "physical abuse of a co-worker." However, after a grievance process and arbitration, Elliott was ordered reinstated. The arbitrator found that the altercation did not constitute "workplace violence" and therefore did not furnish "just cause" for the dismissal. In particular, the arbitrator relied on his assessment of the facts, which led to the conclusion that Elliott was as much the victim as the instigator of the altercation.

While the grievance process proceeded, Elliott had sought unemployment compensation. On July 3, 1996, the Ohio Unemployment Compensation Board found that Elliott was not entitled to unemployment insurance because his firing was justified. This decision was rendered well before the arbitrator's hearing that was held on September 20.

The arbitrator ordered Elliott reinstated on December 19, 1996, but, the company contends that, for whatever reason, it did not receive the decision until early January, after the CBA expired on December 26, 1996. The company waited a few days and then informed Elliott that he would be reinstated, but in the same letter summoned him to a meeting on January 27, 1997, at which meeting he was fired.

The company has submitted affidavits from its General Counsel stating that this firing was "pursuant to DNI's legal determination that he was an unacceptable liability risk for the company" and not for the purpose of disciplining Elliott. The union again sought arbitration on Elliott's behalf, but the company refused. After the union sought relief in the United States District Court for the Southern District of Ohio, the company's refusal to arbitrate was upheld. The question before us now is whether the company is required to arbitrate Elliott's second grievance, in accordance with the terms of the expired CBA, or whether the second termination was sufficiently independent of the first that the obligation to arbitrate does not persist past the expiration of the CBA.

## II

As a general proposition, most terms of an expired CBA remain in effect, pending the negotiation of a new contract or the breaking off of a representation relationship, but this general principle does not universally apply with respect to arbitration agreements. *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 200, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991). This distinction rests in significant part on the importance of explicit assent to arbitration, an assent that would not exist where an

arbitration clause was being used to cover matters that arose with no CBA as a basis.

On the other hand, both the Supreme Court and our court have held that arbitration can be required with respect to matters that "arose under" the CBA. *Nolde Bros., Inc. v. Local No. 358,* 430 U.S. 243, 255, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). The primary case on the delineation of this somewhat fuzzy boundary is *South Central Power Co. v. IBEW, Local 2359,* 186 F.3d 733 (6th Cir.1999), where Judges Gilman and Keith, over one dissent, held that where "a majority of the material facts and occurrences under consideration arose" under the CBA, then an arbitration clause will be enforced, even after the CBA's expiration. *Id.* at 740. Thus, we must decide whether the relevant circumstances can be limited to the management's assessment of, and reasonable fear of, the possibility of future liability from Elliott's actions, or whether we should instead look to all of the underlying circumstances, including especially the precipitating incident itself. We hold that in this case, where no actions bearing on Elliott's fitness for work, nor the justness of his discharge, occurred independently after the expiration of the CBA, the arbitration clause will be enforced.

In our case, Elliott never returned to work. Thus, the company had no basis for any additional adverse judgment on his suitability for employment. Nor did the company become aware of any new facts pertaining to his suitability, such as, for example, altercations in which he was involved since his termination. This is quite different from the precedent on which the company relies, *Chrysler Motors Corp. v. Allied Industrial Workers,* 2 F.3d 760 (7th Cir.1993). In *Chrysler,* a simultaneous reinstatement and firing, as occurred here, was held not to be contemptuous, where the company had "fresh evidence" to justify the second discharge. *Id.* at 764. Here there was no fresh evidence.

Instead, the company simply relied on, in essence, its previous judgment as to the nature and fault of Elliott's actions. Elliott argued that his actions were justified, or at least not reprehensible, because of the danger and commotion posed by the other worker. The management had a different view, and it was successful in persuading the Ohio Unemployment Compensation Board of Review of this view. However, the parties had bargained for the arbitrator's judgment as to these matters, and had agreed that the arbitrator's judgment would be binding. Federal law establishes a very strong presumption in favor of arbitration, and the upholding of arbitration judgments. *See United Paperworkers v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). The fact that the company, or even a separate governmental body in parallel proceedings, comes to a different judgment does not alter the validity of the arbitrator's award.

At most, the company's current argument is that the same conduct upon which it relied to "discipline" Elliott by terminating him also justifies terminating him based on the company's assessment that it might be subject to liability should he again commit unprovoked violence.

However, this argument is circular. The crux of the company's case for the second termination is exactly the same as its case for the first termination: that Elliott was the aggressor in a situation that did not justify the degree of force that he used. The arbitrator having come to a different conclusion, the company cannot simply repackage the same judgment as an independent and superseding reason for termination.

If it were otherwise, virtually every ground on which a company could rely for termination (misbehavior, tardiness, ineffi-

ciency) could be similarly repackaged as just cause for termination based on the company's prediction that a worker would repeat the conduct that the company believed occurred, though the arbitrator found that the conduct either did not occur or was not sufficiently serious to justify a termination.

Our decision in *South Central* upheld an arbitration under an expired CBA under circumstances that were considerably less connected with the original termination than in our case. In *South Central*, there had not been an initial arbitration. Instead, certain matters had been contested for the first time subsequent to the expiration of the CBA, though relying in part on activities that occurred under the CBA. The ultimate basis for the firing there was a final refusal of the worker to relocate, as arguably required by the now-expired CBA. Our court nevertheless found that where even a majority, let alone all, of the relevant circumstances had occurred during the time of the CBA, the arbitration clause would be enforced. This precedent is, of course, binding upon us and the factual circumstances of our case present an even more compelling occasion for the application of this principle.

## IV

We therefore REVERSE the judgment of the district court and REMAND for that court to enter an order requiring arbitration of this dispute in accordance with the expired CBA.