NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0642n.06

No. 16-3520

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 01, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| LINGLONG AMERICAS, INC., et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| HORIZON TIRE, INC., et al., | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

Before: McKEAGUE, KETHLEDGE, and STRANCH, Circuit Judges.

KETHLEDGE, Circuit Judge.  In May 2015, Horizon Tire, Inc. filed two lawsuits in California federal court against Linglong Americas, Inc. ("Linglong Americas"), Shandong Linglong Tire Co. ("Linglong China"), and LLIT Co. ("Linglong Thailand") (collectively, "Linglong").  Linglong countersued in Ohio federal court, and Horizon responded by dismissing its California suit and recasting its claims as counterclaims in the Ohio action.  Linglong then moved to compel arbitration of Horizon's claims, arguing that an agreement between the parties mandated arbitration even though the agreement had expired by its terms four years earlier.  The district court denied Linglong's motion.  We affirm.

I.

We recite the facts as pled by the non-moving party, namely Horizon.  *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 481 (6th Cir. 2009).  In 2006, Horizon began working

with Linglong China to develop a new brand of Chinese-made tires for the American market. In December of that year, the companies entered into a "Collaboration Agreement," under which Linglong China would produce a line of light-truck tires, for which Horizon would be the "sole distributor." R. 38-1 ¶ 4. The Agreement, by its terms, would "remain valid for five years" if not renewed. *Id.* ¶ 10. The Agreement also contained an arbitration clause providing that, "if no settlement can be reached through negotiations," the parties would arbitrate in China any "disputes or claims arising out of this agreement." *Id.* ¶ 9.

By 2010, Horizon and Linglong had expanded their collaboration to include a wide range of tires not covered by the Agreement, including tires for passenger cars, heavier trucks, off-roading, and farming. When the Agreement expired in 2011, the companies did not renew it. According to Horizon, however, the companies repeatedly affirmed in correspondence, marketing materials, and other dealings that Horizon would be the exclusive U.S. distributor for all the brands they had developed together, including a brand known as "Crosswind."

In 2014, Linglong began to undermine this exclusive relationship, even as the companies continued to deepen their business ties. That year, a Linglong executive, Feng Wang, solicited a large order of tires from Horizon. Feng also affirmed that Horizon was "the only company that could sell Crosswind tires in the United States." Feng asked Horizon for its confidential list of retail customers, which Horizon agreed to share subject to certain conditions. In November 2014, Horizon finalized an order for 3 million Crosswind tires from Linglong Thailand. Feng continued to describe Horizon as Linglong's "lifelong partner" and "exclusive U.S. distributor." Around the same time, Feng asked Horizon to loan Linglong Thailand about $3.6 million. Horizon agreed on the condition that the loan be repaid within a month.

Over the next few months, the relationship between Horizon and Linglong began to deteriorate. In December 2014, Horizon found evidence that one of its competitors in the U.S. market was preparing to sell Crosswind tires. When Horizon confronted Linglong with that evidence, Linglong promised to "protect Horizon's exclusive distributorship for Crosswind[.]" In early 2015, however, Linglong began to sell Crosswind tires through Linglong Americas and other distributors in the United States. Linglong also refused to repay the $3.6 million it had borrowed from Horizon, and failed to deliver most of the tires Horizon had ordered.

In May 2015, Horizon sued Linglong in California federal court, alleging that Linglong had not repaid the loan, fulfilled the November 2014 order, or honored Horizon's exclusive distributorship rights. Linglong then sued Horizon in Ohio federal court, seeking, among other things, a declaration that Horizon did not have an exclusive distributorship arrangement with Linglong. Horizon dismissed its California suit, and filed an answer and counterclaims in Ohio. Linglong amended its complaint, and Horizon then filed an answer and amended counterclaims for declaratory relief, breach of contract, and misappropriation of trade secrets, among other claims.

Linglong filed a motion under Rule 12(b)(1) to dismiss or stay Horizon's amended counterclaims pending arbitration. The district court denied the motion, reasoning that Horizon's claims were not based on the Agreement, that the Agreement had expired, and that Linglong had waived any right to arbitrate. Linglong now appeals.

II.

We review de novo the district court's refusal to compel arbitration. *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 394 (6th Cir. 2014).

Linglong argues that the district court should have granted its motion to compel arbitration because, in Linglong's view, the Collaboration Agreement's arbitration clause survived the Agreement's expiration in December 2011. An arbitration clause survives the expiration of a contract only when the dispute at issue "arises under the contract." *S. Cent. Power Co. v. Int'l Bhd. of Elec. Workers, Local Union 2359*, 186 F.3d 733, 738-39 (6th Cir. 1999). Such a dispute arises in two circumstances relevant here.

First, a dispute arises under the contract when a "majority of the material facts and occurrences" giving rise to the dispute occurred before the contract expired. *See id.* at 738-39. Horizon's claims center on events that unfolded in 2014 and 2015, years after the Agreement expired. In the span of those two years, Horizon alleges, Linglong refused to repay a loan, misappropriated a customer list, failed to fulfill a large order for tires, and began interfering with Horizon's putative exclusive distributorship. Although some of these claims may depend in part on agreements and dealings that predate December 2011, the vast majority of events described in the amended counterclaims, including most of Linglong's alleged statements about Horizon's exclusive distributorship, occurred well after that date. Linglong indeed does not even argue the contrary.

Second, a dispute arises under the contract when the contractual right at issue survives the expiration of the contract itself. *See id.* Here, one might interpret Horizon's counterclaims to be based in part on a putatively permanent right of exclusive distributorship that in turn arises from the Collaboration Agreement itself. But Horizon—both in the district court and on

appeal—has expressly waived that theory as a basis for its claims. *See Thomas v. Miller,* 489 F.3d 293, 303 n.8 (6th Cir. 2007). Specifically, in the district court, Horizon conceded that the Agreement is "no longer enforceable" and that its claims "arise out of facts and circumstances that occurred after the Collaboration Agreement expired." R. 51 at PageID 783-84. And on appeal Horizon has stated that, "to the extent that Horizon had a claim based on a continuing obligation created by the Collaboration Agreement, Horizon has unequivocally and irrevocably waived it." Horizon Br. 33. Thus, Horizon's claims—as actually presented by Horizon—are not based on any rights created by the Collaboration Agreement. The Agreement's arbitration clause therefore does not apply to those claims. It remains only to note that Horizon is now judicially estopped from any claim against Linglong based upon the Collaboration Agreement. *See Pennycuff v. Fentress City Bd. of Educ.*, 404 F.3d 447, 452-53 (6th Cir. 2005).

The district court's May 6, 2016 order denying Linglong's Rule 12(b)(1) motion is affirmed.